The Chief Justice delivered the opinion of the court.
Various reasons were on the argument of this case assigned for setting aside the verdict which at the Essex Circuit, in April, 1826, was found for the plaintiff.
1, The first reason I shall examine is the alleged inadmissibility of a deed from John Smith and Elizabeth his wife to Benjamin Scudder. This deed was offered and read by the plaintiff, for the purpose of showing that Elizabeth Smith, who was called by him as a witness, was not interested, and was therefore competent to give evidence. The lessors of the plaintiff claimed title under Benjamin Scudder, Jr., as heirs at law. The defendant claimed under Benjamin Scudder, Sen., and denied that the former ever had title to the premises in question. Some years after the death of Benjamin Scudder, Jr., Elizabeth Smith, formerly his wife, and then the wife of John Smith, made this deed to Benjamin Scudder, Sen., whereby in consideration of 2831. 6s. 8d. they conveyed to him all their estate, right, title, property, claim and demand, “ whether of possession, dower or otherwise,” in and to the premises in question, of which she was then in possession, of part by herself, and of part by her tenant, one Henry Webb. The objection to the *284 admissibility of the deed is founded on the acknowledgment; for if that be lawful, it is uncontroverted that any estate or interest she might have had was divested, that she stood indifferent, and was lawfully admitted and- examined. The certificate of the acknowledgment is in the following words : “Borough of Elizabeth, Essex county, ss., Be it known, that on this 29th day of April, in the year of our Lord one thousand eight hundred aud eight, personally appeared before me Caleb Halsted, Jr., one of the judges of the inferior Court of Common Pleas, holden at Elizabethtown in and for the borough aforesaid, John Smith and Elizabeth his wife, the grantors to the foregoing conveyance, and acknowledged that they signed, sealed and delivered the same as their act and deed for the uses and purposes therein expressed. And the said Elizabeth, wife of the said John Smith, being by me examined, separate and apart from her said husband, did acknowledge that she signed, sealed and delivered the same, freely and voluntarily and without any threats or com-*227] pulsion *from her said husband. Caleb Halsted, Jun.” The first objection to this acknowledgment denies the authority of the officer before whom it was taken. He was mayor, it is said, of the borough of Elizabeth. Under the act respecting conveyances, Rev. Laws 458, section 1,' an acknowledgment of a deed for the conveyance of lands may be made before “one of the judges of any of the-Courts of Common Pleas of this state.” By the charter of the borough of-Elizabeth, Rev. Laws 100, sect. 6, it is enacted “ that the mayor, deputy mayor, recorder and alderman of the said borough and their successors forever [who are appointed and commissioned in like manner as judges and justices of the peace throughout the state; page 98, sect. 2,] shall and may have and hold in the name of the state of Hew Jersey one Court of Common Pleas within the said borough,” “ before the mayor, deputy mayor or the recorder for the time being, and any two or more of the *285 aldermen for the time, or any three or more of them, whereof the mayor, deputy mayor or recorder to he one.” The mayor of the borough of Elizabeth, is within the scope of tho act respecting conveyances in the most strict and literal construction. He is a judge of a Court of Common Pleas of this state. There is no word or phrase in the act which confines its powers to the judges of the County Courts of Common Pleas. Nor does there appear the slightest reason for any legislative distinction, or that one class should be less worthy of confidence in this respect than the other, when botli are appointed in the same manner and commissioned by the same authority. It deserves also to be remarked that in the act of December 2d, 1743, Allinson 132, sect. 2, acknowledgments are authorized to be made before one of the judges of the county courts for holding of pleas within the respective counties of this colony.” When that act was passed there were no borough or city courts of Common Pleas. It continued until the passage of the act now in force, which I have already mentioned; and the difference of phraseology may very probably have been induced by the consideration that one or more borough or city courts of Common Pleas had in the moan time been established and were in existence.
The acknowledgment of this deed is further the subject .of objection, because the certificate omits to state that the grantors signed, sealed and delivered it as their voluntary act and deed; and that the acknowledgment of the wife was on a private examination, and that she acted without any fear of her husband. The *questions here raised [*228 are of almost incalculable importance. They interest in a greater or less degree nearly every freeholder in the state, so extensively and intimately are acknowledgments of deeds interwoven with our system of real property. The regulations concerning them are contained in the first and fourth sections of the act respecting conveyances, Rev. Laws 458. By the first section, it is enacted, “ that if any deed or con *286 veyance of lands, tenements or hereditaments lying and being in this state,” “ shall be acknowledged by the party or parties who shall have executed it, or be proved by one or more of the subscribing witnesses to it, that such party or parties signed, sealed and delivered the same as his, her or their voluntary act and deed, before the Chancellor of this state, or one of the justices of the Supreme •Court of this state, or one of the masters in chancery, or one of the judges of any of the Courts of Common Pleas of this state, and if a certificate of such acknowledgment or proof shall be written upon or under the said deed or conveyance, and signed by the person before whom it was made, then every such deed or conveyance so acknowledged or proved and certified shall be received in evidence in any court of this state, as if the same were then and there produced and proved.” By the fourth section, it is enacted, “ that no estate of a feme covert in any lands, tenements or hereditaments, lying and being in this state, shall hereafter pass by her deed or conveyance, without a previous acknowledgment made by her, on a private examination, apart from her husband, before one of the officers aforesaid, that she signed, sealed and delivered the same as her voluntary act and deed, freely, without any fear, threats or compulsion of her husband, and a certificate thereof written on or under the said deed or conveyance, and signed by the officer before whom it was made.” The fair and just construction of this section is satisfied by a substantial fulfillment of its requirements, and does not demand a verbal compliance and conformity. A certificate is sufficient which shews the substantial matters mentioned in these sections, although it does not contain every word found in them. ,This position is fully sustained by several considerations. The language of the sections requires no more. It gives no set words, prescribes no particular form, and merely declares what shall be done, without directing the precise manner in which it shall be done. While then a rigid adherence *287 to the substance of the statute should be pursued, a Reasonable latitude with respect to mode is allow- [*229 able. The usage of all officers in all parts of the state from the passing of the act to the present time has given to it a practical construction and sanctioned a liberal exposition with a force not now to be resisted, and which ought not, without the most imperious motives, to be, at this day, brought into question. The practice of all our courts has been to receive in evidence deeds under acknowledgments substantially though not verbally conformable to the act. I have examined the books of records in the secretary’s office, where it will be recollected, since the act of 1799, which required conveyances to be recorded in the respective counties, but few' comparatively have been recorded. An examination of the county records would have shewn, I doubt not, a much more striking result. Of fifty-five deeds taken indiscriminately, the word voluntary was omitted in forty-six acknowledgments and inserted in nine. Of sixty-six deeds acknowledged by married women, the certificate of private examination was inserted in twenty-eight, was wanting in twenty-five, most of which stated the examination to have been “separate and apart from her husband,” and in thirteen, the certificate was “ being by me privately examined according to law.” Of all the acknowledgments there recorded, taken before justices of this court, 1 found but one which literally complied with the act, and of the acknowledgments of femes covert before them, not one. In some the word “ voluntary,” in others the words “ act and deed,” were omitted. In some the married women were said to have been examined “separately according to law,” in others to have been examined “separate and apart from their husbands,” and in others that the married woman “executed the same of her own free will, without any threats or compulsion from her said husband.” If the force of contemporaneous exposition and long usage ever found place, it should be felt here. If a judge may ever look to
*288 consequences lie should do so here. If he be evér permitted to pause in the march of duty, he may here be allowed to reflect on the wide spread havoc and desolating ruin which would result from requiring for the first time a literal compliance with the statute. The fancy of the poet and the imagination of the fabulist, at the opening of the box of Pandora, would be more than realized, for here not even Hope would be left at the bottom. The courts of our sister states have with great unanimity adopted the same *230] liberal rule in the construction of their statutes. *In M'Intire v. Ward, 5 Binney 301, Chief Justice Tilghman, of Pennsylvania, says, Ho particular form is necessary. The words of the act need not be used if its directions are strictly complied with. The court would be departing from the line of its duty if it were studious to avoid conveyances by objections founded merely upon form. In Shaller v. Brand, 6 Binn. 435, the 'acknowledgment as to the wife was in these words, “ she the said C., being of full age, separate and apart .from her said husband, by me examined, and the full contents made known to her, voluntarily consenting thereto.” The statute of Pennsylvania is thus, “ And if upon such separate examination she shall declare that she did voluntarily, and of her own free will and accord, seal, and as her act and deed, deliver the said deed or1 conveyance without any coercion or compulsion of her said husband, every such deed or conveyance shall be good,” &c. The acknowledgment was held sufficient. The same judge said, " It is insisted by the counsel for the defendant that the form prescribed by law should be strictly pursued, but such has never been the opinion of this court. We have always declared that it was sufficient if the law was substantially complied with, and on any other construction the peace of the country wo'uld be seriously affected. It is not straining the expressions “ voluntarily consenting thereto ” too far to say that they imply that she declared that she executed the deed voluntarily, and that is sufficient, for if the execu *289 tion was voluntary it was without coercion or compulsion.” In Luffborough v. Parker, 12 Serg. and Raw. 48. Chief Justice Tilghman said, “this act for proof, &c., of deeds, must be substantially complied with, but when the substance is found, it is neither the duty nor the inclination of the court to defeat conveyances by severe criticism on language.” In Maryland, where the statute required that the feme covert be privately examined out of the bearing of her husband,” it was held, Webster v. Hale, 2 Har. and M’Hen. 19, that a certificate that “ she being privately examined, did declare,” &c., was sufficient. In New York, the statute requires that the officer taking the acknowledgment “ shall know or have satisfactory evidence that the person making such acknowledgment is the person described in, and who executed such deed,” &c. And in the case of Jackson v. Gumaer, 2 Cowen 552, the Supreme Court of that state sanctioned a certificate in these words : “ came 1). R. to me known, and acknowledged, &c. Chief Justice ^Savage said “ The form used in this case has been [*231 in very general use, and the practice in this respect may perhaps amount to a construction of the act.” In Battin v. Bigelow, Peters’ Rep. 452, an objection to a deed for lands in New Jersey made in the Circuit Court of the United States for this district, Washington, Justice, delivering the opinion of himself and Judge Pennington, who sat for several years in this court, said, “as to the second objection, the court is of opinion that the omission of the word voluntarily, is substantially supplied by the expressions that “ she freely executed the deed, without, the threats,” cfec., of her husband.” In Hende v. Longworth, 11 Wheaton 205, Justice Thompson, in delivering the opinion of the Supremo Court of the United States on the sufficiency of the acknowledgment of a deed of lands in Ohio, said, “It ought to appear with all reasonable certainty that the requisites of the law had been complied with.” In Talbot v. Simpson, Peters’ Rep. 188, a certificate of acknowledgment in these *290 words, “ she being of full age, knowing the contents and freely consenting thereunto,” was held sufficient under the statute of Pennsylvania of 1770, which directs that the officer shall read or otherwise make known to her the full contents of such deed.” Judge Washington said, “the form of the certificate is immaterial, provided the directions of the law are substantially complied with.” In Delancy v. M'Keen, in the Circuit Court of the United States for the Pennsylvania district, 1 Wash. Rep. 525, the following remarks, very applicable to the matters before us, were made by Judge Washington. “What influences my opinion more than anything else, is that courts, lawyers, conveyancers and all others, seem to have concurred in the opinion that the exemplifications of deeds like the present, recorded as this was, were evidence. If one solitary decision affirming the practice had taken place, all. would have agreed that it would bind us, and yet the uniformity of practice and of conduct respecting such deeds operates more powerfully with me because they amount to a contemporaneous exposition of the act of 1715, fortified by subsequent unvarying usage. The practice is incorporated with the land titles of this state; and if it be an error it is common and uniform, and a decision now against the practice would be mischievous in the extreme.” This case came afterwards before the Supreme Court of the United States on a writ of error, 5 *232] Cranch 22. One of the counsel said, “ It had *been the contemporaneous and uniform practice from the year 1715, to the date of this deed to acknowledge 'deeds before a judge of the Supreme Court of Pennsylvania. That practice had never been questioned.” Judge Livingston observed, “ If the practice be so, I think it puts an end to the question.” In delivering the opinion of the court, the Chief Justice said, “ Were this act of 1715 now for the first time to be construed, the opinion of this court would certainly be that the deed was not regularly proved. A justice of the Supreme Court would not be[deemed a justice of the county, *291 and the decision would be that the deed was not properly proved; and therefore not legally recorded. But in construing the statutes of the state, on which land titles depend, infinite mischief would ensue should this court observe a different rule from that which lias long been established in the state. It is of some weight that this deed was acknowledged by the Chief Justice, who certainly must have been acquainted with the construction given to the act, and that the acknowledgment was taken before another judge of the Supreme Court. It is also recollected that the gentlemen of the bar who supported the conveyance, spoke positively as to the universal understanding of the state, and that those who controverted the usage on other points did not controvert it on this. But what is decisive with the court is that the judge who presides in the Circuit Court for the district of Pennsylvania, reports to us that this construction was universally received. On this evidence the court yields the construction which would be put on the words of the act.”
Holding then the position to be unquestionable, that a substantial compliance with the act respecting acknowledgments is sufficient, it remains to examine the acknowledgment before us. The grantors acknowledged that they signed, sealed and delivered the conveyance as their act and deed. The term voluntary is omitted. But the idea seems to be clearly and essentially embraced in the phrase. Without freedom of will, it was not their act and deed. If they executed it under coercion, it was the act and deed of another. When they appeared before the officer and avowed it to be their act and deed, it is assuming nothing but what is fairly, naturally and necessarily implied, if not indeed fully expressed, to receive it, as all concerned manifestly intended it, as a fulfilment in this respect of the directions of the statute. The certificate states that *the acknowledg- [*233 ment of the wife, Elizabeth Smith, was made to the officer on an examination by him separate and apart from her *292 husband, but does not use the precise words of the statute “ on a private examination apart from her husband.” On the effect of this omission more doubt may justly be entertained 'than on either of the others. It is insisted that the examination must not only be apart from the husband but apart from all other persons. On much reflection, however, I am satisfied that such is not the sound construction of the statute, that the design of the legislature was to exclude the husband, and him only, from this examination. The phrase “ private examination ” is qualified and explained by the superadded words “ apart from her husband,.” Otherwise these words are without purpose and meaning; for if by “private ” is meant the absence of all persons whatever, why add “ apart from her husband,” who, unless man and wife were literally as well as figuratively one, must necessarily be excluded ? Substitute instead of the word's in question, the meaning attributed to them, and its impropriety will perhaps be more obvious. At the examination all persons whatever, and also her husband, shall be absent. The design of the legislature in this examination was to protect the woman from the control of the husband and him alone. She is to declare herself free from fear, threats or compulsion, not in general, or of all persons, but of her husband. He only then needs be excluded. It may be objected that this construction supposes the legislature to have used more words than were necessary to express their meaning, for that'the words “ apart from her husband ” would have sufficed. 'This objection, however, finds its answer in the same section; for if the feme covert executed the deed freely, she. must have done it voluntarily and without fear, threats or compulsion. Hence it appears they were very properly not sparing of words when these might tend more fully or clearly to express their meaning. The censure cast on this acknowledgment for the want of the word “ fear ” is entirely too severe a criticism, if a substantial compliance satisfies the act. It is very possible, as remarked by counsel on the *293 argument, that fear may exist without threats, but it is not very easy to suppose there can be fear if there be no compulsion; and if the wife executed the deed “freely and voluntarily,” she must necessarily have been without fear. These expressions negative in the most unequivocal and exclusive manner the presence of fear.
*2. Another reason assigned for sotting aside the [*234 verdict is, that the court overruled the objection of the defendant’s counsel to the reading of two deeds offered by the plaintiff, one of them from Thomas Poynear and Sarah, his wife, to Benjamin Scudder, the elder, dated 2d April, 1811, by which, in consideration of $205, they conveyed to him all their estate and interest in the premises in question; and the other of them, from the same persons to Benjamin Scudder, one of the lessors of the plaintiff, dated 15th April, 1826, whereby they conveyed to him all their estate and interest in the premises. To understand the questions raised by this reason, it is necessary to refer to some of the facts of the case. Benjamin Scudder, the younger, left at his decease five children, to whom as his heirs-at-law the premises in question descended, as the plaintiff alleged. Three of them are lessors; and the shares alleged to have descended to them were the premises sought to be recovered. The share which descended to Sarah Poynear, one of the children, was not claimed, for she had conveyed it by the deed of the 2d of April, 1811, to Benjamin Scudder, the elder. Nor was the share which was said to have descended to Eliza, another daughter, claimed, for she had died after the date of the demises in the declaration; and the intent of the deed of 15th April, 1826, was to convey to Benjamin Scudder, her brother, one of the lessors of the plaintiff, that part of the share of Eliza, which by her decease intestate and without issue, was supposed to have fallen to the said Sarah Poynear, her sister. Sarah Poynear was called by the plaintiff to give evidence, and those deeds were produced to shew, the former, a recognition by Benjamin Scudder, the *294 elder, of the right of Benjamin Scudder, the second, so far forth as the same might thus operate; and both, that Sarah Poynear had no interest, and was, therefore, a competent witness.
The objection raised on the trial to the first of these deeds, brought in question the acknowledgment, and was on the same grounds as have been already examined in regard to the deed of Elizabeth Smith. I shall, therefore, referring to what I have already said, make no more remarks on that subject.
. The objection to the second deed is, that neither grantor nor grantee were in possession at the time of making it, but a third person, the defendant in this cause, holding adversely, and the deed, therefore, is said to be void. It is not necessary to examine or decide the question which was *235] made, by the defendant’s counsel, *the foundation of this objection, whether in Hew Jersey, one out of possession, and during an adverse possession, but having title, may make a conveyance which shall be valid and operative against him in possession. Eor, whatever may be the true resolution of that question, the deed before us was valid as between the parties to it, and hence it was competent, and sufficient for the purpose for which it was offered in evidence, which was, not to deduce title to the premises in the plaintiff and to establish his claim against the defendant, but merely to shew that Sarah Poynear had no interest either in the cause or the question. In estimating the propriety of evidence, the use to be made of it, the purpose intended to be accomplished by it, must always be borne in mind. If Benjamin Scudder, the grantee, by this or any other action, recovered possession of the premises, Sarah Poynear could not treat this deed as a nullity and demand them of him. If using her name he should recover the share which fell to her by the decease of her sister, the recovery would by force of this deed and as between them, be for his, not her, benefit. A person who has executed a deed is estopped as to him to whom the deed *295 is made, to say lie liad no title when he made it. 4 Com. Dig. 76, 81. Estoppel, A. D. Cro. Car. 110. In the year book, 27 Hen. 8, page 23. B. 1. Fitzherbert, justice, is reported to have said, The statute 1 Rich. 2, ch. 1, is that feoffments made by maintenance to great men shall be void; but in such cases it is a good feoffment between the feoffor and feoffee, but as to strangers the feoffment is void. In Upton v. Basset, Beaumond, justice, said, A feoffment upon maintenance or champerty is not void against the feoffor but against him who hath right, Cro. Eliz. 445. Feoffments made to great men by maintenance are void by the statute 1 Rich. 2, but it is as to strangers and not between the feoffor and feoffee, Bro. Abr. tit. Feoffment, 332, plo. 1. Marvin, in his reading, says that by the statute 1 Rich. 2, where a disseissor makes a feoffment by maintenance and takes the profits, the feoffment is void by the statute to all intents; but by Fitz James, Chief Justice, and by Englefield, justice, and divers others, it is not void between the feoffor and feoffee, but it is void as to a stranger, Bro. Abr. ibid pl. 19. The cases which were read by the defendant’s counsel on the argument from the New York reports, do not impugn the doctrine I have stated. They merely prove that the rule is there considered to be settled that the deed of a person out of possession is not valid as to a *stranger. [*236 But in other cases in those reports the validity as between grantor and "grantee is explicitly recognized. In Jackson v. Demont, 9 John. 55, Chief Justice Kent says “It is a well settled principle of law that if a person out of possession conveys to a stranger land held adversely by another, the conveyance is void, so that the stranger cannot maintain an action upon it.” And again, “ It might possibly be a question whether the acceptance of the deed from Lathrop to Miller was not an act of maintenance in Miller. We mean not, however, to discuss and decide this point in the present case, for even admitting the sale to have been an act of maintenance, yet the deed was effectual as between the *296 parties to it. Rufus Lathrop cannot recover in opposition to his deed to Miller.” In Jackson v. Sherwood, 2 John, cases, 41, Kent said “ It appears that the lessor of the plaintiff claims by mesne conveyances under the patent of 1786. and that at the time of those conveyances the premises must have been held adversely by the defendant, so that nothing passed by the deeds. This objection, however, would only serve to turn the plaintiff 'round to a new suit in the name of the persons from whom he derives his title.”
From this view of the subject it clearly results that the deed from Sarah Poynear was properly admitted.
3. The next reason for setting aside the verdict is that illegal evidence was admitted, “because Elizabeth Smith was allowed to prove that her husband read to her a deed to him for the mill property, and because Elias Wade and Isabella Wood were permitted to give in evidence declarations of Benjamin Scudder, Sen.,” which were in substance that the property in question belonged to the children of his son Benjamin. I place these together because they admit in my opinion of a common answer. If the merits of this reason were to be examined, it would not fail to be observed, that evidence was given that the deed of which Elizabeth Smith spoke had been improperly obtained from her by Benjamin Scudder, the elder, and the return of it refused; and that his declarations testified by Wade and Wood were before his sale to Geiger, and while his son’s widow and children were in actual possession. But a conclusive answer to this reason is that no objection was made on the trial of the cause to the testimony now alleged to be illegal and inadmissible. A party is not permitted to impugn a verdict in consequence of *237} the introduction of testimony to which on the tidal he raised no objection. The admission of such testimony is no error of the judge. He may indeed spontaneously interpose, and clearly possesses power and right to exclude testimony he finds irrelevant or illegal. In many instances, *297 especially where the matter is plain and palpable, to do so is commendable. But duty does not invariably require it? and the eye of interest or friendship oftentimes fancies bias in a judge who thus interferes when the party against whom the evidence is offered, is silent, and therefore presumed acquiescent. The party must make his objection to the evidence in due season or else forego it forever. To suffer him to be silent and take the chance of a verdict in his favor, and if unsuccessful, set it aside because evidence was admitted which on his objection would have been excluded, would be a gross perversion of justice. In Horford v. Wilson, 1 Taunton, 12, an objection of this nature being made, Mansfield, Chief Justice, observed, “ I do not remember that any such objection was made on the trial.” Neither will the court set aside a verdict on account of the admission of evidence, which ought not to have been received, provided there be sufficient without it to authorize the finding of the jury. In Goodtitle v. Welford, Doug. 139, on motion for new trial on the in competency of a witness, Lord Mansfield said, “on such a motion as the present no objection to a witness should be received wdiich was not made at the trial;” and by Justice Willes, “The objection on this ground was not made at the trial, which is a reason for not setting the verdict aside.” In Clymer v. Little, 1 W. Bl. 345, among other reasons for rejecting an application for a new trial on the ground of inadmissible evidence, Lord Mansfield said, “ no objection was made to its production.” In The Queen v. Helston, 10 Mod. 202, a book said indeed by Lord Mansfield to be of little authority, although he afterwards, on another occasion, cited a case from it, a point in law was started by the judge and the counsel did not take it up, but insisted on other facts which were found against them, whereas had the counsel insisted upon the matter of law started by the judge, the verdict must have passed for them, but it was held there was not sufficient cause for a new trial. Eyre, justice, said, “Mistake of judge or jury, *298 a good cause of granting a new trial, but never yet heard that the mistake of counsel was so. The counsel stands in the place of his client, and therefore if the counsel waive a *238] point it is the same *as if the client did it himself.” In Petrie v. White, 3 D. and E. 8, Lord Kenyon said, In ordinary cases, a person who has an opportunity of making a defence at the trial, which he neglects to do, is not entitled to a new trial in order to let him in to that defence. In Turner v. Pearte, 1 D. and E. 717, on application for new trial on allegation that some of the witnesses examined were interested, Justice Buffer said, “there never yet has been a case in which the party has been permitted after trial to avail himself of any objection which was not made at the time of the examination.” In Hinde v. Longworth, 11 Wheat. 209, Thompson, Justice, in delivering the opinion of the court, “ As a general rule, we think the party ought to be confined in examining the admissibility of evidence to the specific objection taken to it. The attention of the court is called to the testimony in that point of view only, and to admit an enquiry afterwards, whether the evidence might not have been admissible for some other purpose, would be sanctioning a course of practice calculated to mislead.” In the case of The Palmyra, 12 Wheat. 18, on appeal, the Supreme Court of the United States say, “ however well founded this objection may be as to his competency on the point of damages, having been admitted both in the district and circuit courts without objection, we think there was a waiver of the objection, and it cannot now be insisted on.”
4. The next reason for new trial is, that the plaintiff, after having examined a witness, Elizabeth Smith, in the early part of the trial, was permitted afterwards, near the close of it, to examine the same witness on a new and distinct subject. The plaintiff claimed title, as his counsel stated in opening, on two grounds, an adverse possession for more than twenty years, and a deed from Benjamin *299 Scudder, Sr., to his son Benjamin Scudder. Upon the first of these grounds, the plaintiff, among his earliest witnesses, examined Elizabeth Smith. After he had rested, and after the defendant had examined sundry witnesses, the plaintiff again called Elizabeth Smith, and examined her to prove the existence of the alleged deed. In strictness, this course of procedure was irregular. A plaintiff should in the first place, and before he rests, examine all his witnesses and to all his points, except such witnesses and such points as are made proper by the defendant’s evidence and defence. The evidence to be given on the part of the plaintiff after the defendant has been heard, should be confined to *rebutting evidence. It is not proper to give just [*239 so much evidence as may save a non-suit, and bring in a corps de reserve toward the close. Heither convenience, nor economy of time, nor candor of practice will permit. To bring out the defendant, as one of the plaintiff’s counsel expressed himself, cannot be countenanced. In this warfare nothing is admitted but fair, open and honorable combat. Ho feints, no stratagems, no ambuscades. Gilpin v. Consequa, Peters' Rep. 89. It is, however, well known that in our practice this strict rule has boon by no means rigidly enforced. On the contrary, a laxity perhaps censurable, has long prevailed. In the present case, the rule, whether of a more strict or less rigid nature, ought not to be applied. Ho objection was made by the defendant’s counsel. ITad an objection been made, the evidence would perhaps have been overruled. The defendant has no ground, therefore, of complaint. If the admission of evidence, in itself illegal, is not sufficient cause for setting aside a verdict when not resisted, much less can evidence clearly legal be so, because not offered and received in proper order and time.
5. Another reason for setting aside the verdidt is, the discovery of now testimony. On the argument were read affidavits of Sarah Scudder, Sarah Hibbard and Silas Betts, persons not examined on the trial, and of whose ability to *300 give evidence the defendant swears he was then ignorant. The first two state they have at different times heard Elizabeth Smith say her husband had no deed for the property. The object of their testimony is solely to discredit Elizabeth Smith, to shew that on other occasions she has made representations different from her relations to the jury. For unless she were examined as a witness, it is obvious their testimony would be wholly inadmissible. Silas Betts in his affidavit states he heard Benjamin Scudder, Junior, say, while in possession of the property, that it belonged to his father, and he had no deed for it. His testimony is of the kind called cumulative, or further evidence of matters already testified on the trial;.for Robert Young, a witness called by the defendant, swore that Benjamin Scudder, Junior, told him he had never got a deed for it from his father, and Samuel Dow testified that one day while working at the mill he said he did not know that he should ever get anything for it. Such being the character of the newly discovered evidence, it cannot sustain the present application. A new trial will not be granted to let in a party to the production of new witnesses for the pur*240] pose *of discrediting those examined by his adversary ; nor on account of the discovery of new evidence of a cumulative character. Both these rules have been decided in this court, and I shall rely on the cases here, without a review of the decisions elsewhere, which, however, in England, Massachusetts and Hew York, notwithstanding some apparent abberrations, are entirely accordant with our own. In Jessup v. Cook, 1 Halst. 434, application was made for new trial on the ground that the defendant had discovered new and important evidence. The affidavit of one Black-wood, who had not been previously examined, was read to shew that Jessup, the plaintiff, had admitted to him a particular fact. The court overruled the application. Chief Justice Kinsey said, “ It appears from my notes of the trial that this fact was attempted to be proved, that it was the *301 subject of enquiry then, that evidence was given to the jury on the point, but that it was not made out.” Boudinot, Justice, said, “At the trial both parties adduced evidence to this particular point, I think it would be introducing a new rule and establishing an extremely bad precedent to sot aside the verdict and grant a new trial because one' party has since discovered evidence which he thinks entitled to more weight than any which he had produced at the trial. If the law were established according to the views of the defendant not one verdict in ten would stand. Some corroborating evidence may always be found or made, and in deviating from the rule by which courts have heretofore been guided, the trial by jury -would become the most precarious of all trials.” In Deacon v. Allen, 1 South. 388, the court held that the discovery of evidence merely additional to and corroborative of what was given upon the trial, was not ground for a new trial. Justice Southard, in delivering the opinion of the court, intimated that it would be of dangerous consequence to the rights of parties and the safe administration of justice, and that the court ought not to grant a new trial to a party merely to correct his error when he has discovered where he was deficient, and that he had mistaken the necessary amount of testimony. In Price v. Ward, 2 Halst. 127, Chief Justice ’Kirkpatrick said, “ I take if to bo a principle clearly settled, that a new trial will not be granted upon the discovery of witnesses who will swear against the credit of those sworn on the trial.”
G. The remaining reason for granting a new trial is, that the verdict was against evidence. When the cause went to the jury *there was little else than matters of fact in [*241 controversy. In the .summing up of the counsel of the parties there was little, if any, difference as to principles of law. ’With an explanation of the few plain legal points which were involved, the judge submitted the issue to the jury, as chiefly within their province, without intimating the *302 faintest opinion as to the relative weight of the evidence. On both sides, facts and circumstances of much weight, and entitled to great respect, were proved. It is not my intention to examine them at large. A brief view of those exhibited on the part of the plaintiff, for whom the verdict was given, I shall extract from the charge, which will be found fully supported by the case. “ On the part of the plaintiff these matters are relied on. 1. That Benjamin Scudder, Junior, repaired the mill and premises from time to time. 2. That he rented them to different tenants and received the rents, and that his wife did the like after he went on his unfortunate voyage. 3. That he built a large and valuable house on the premises. On this point some dispute was made. If he did not himself build, I mean at his expense, the house, this point is of no weight. If he did build it, at his expense, you will then take it into consideration, and give it such influence as it deserves. 4. The payment made by Benjamin Scudder, Junior, to Mrs. Smith,' for her claim of dower. 5. The taking by Benjamin Scudder, Senior, of a release from the widow of Benjamin Scudder, Junior, of her interest in the premises. 6. The taking by Benjamin Scudder, Senior, of a release from his grandchild, Sarah Poynear, and her husband. 7. Various acts of Benjamin Scudder, Senior; thus, Samuel Dow says, he built a porch at the tavern house, for part of which the widow paid him, and for the rest she gave him an order on the old gentleman, who allowed it out of vendue money due to the estate of Benjamin Scudder, Junior, so that it was paid out of his estate. Again, the balance due to Samuel Sayre for his work at the house was paid by Benjamin Scudder, the elder, as the administrator of his son. 8. Various declarations made by the old gentleman. To Captain Elias Wade, that the property belonged to the children. To Mrs. Post, that he was going to sell Benjamin’s property and put the money out at interest for his children when they should come of age; and when asked where would the widow be, *303 lie said lie would pay her her thirds. To Samuel Sayre, that the property belonged to the children.” A verdict on questions oí fact, fully ^discussed by counsel, unexcep- [*242 tionably explained by the judge, and where strong evidence was given on both sides, ought not lightly to be disturbed, especially on a comparison of the weight of testimony made here, deprived of the important advantages possessed by the jury.’ Upon the relative strength of the evidence it appears to me most proper to express no opinion, because not strictly necessary, and because we have reason to believe the cause, whatever may be our determination on this application for a new trial, will go before another jury, where our opinion might, unhappily, prejudice; for we were told by the defendant’s counsel that a new ejectment would be immediately brought if judgment should be rendered against him. It is enough in my opinion that the weight of evidence, if on the side of the defendant, is not so palpable and preponderating as to justify us in depriving the plaintiff of the verdict. I wish, however, not to be misunderstood to intimate that the weight of evidence is on the side of the defendant. On this subject I intend, for the reason I have suggested, cautiously to abstain from any expression.
Upon the whole, there are, in our opinion, no grounds for a new trial, and judgment should be rendered for the plaintiff.
Judgment for the plaintiff.