SHALLER and another, administrators of SHALLER, against BRAND.

IN ERROR.

THIS was a writ of error to the Common Pleas of *Dauphin* county.

In that court it was an action of debt upon a bond given by *Adam Shaller* the intestate, to *Christian Brand* the plaintiff below, for 30*l.*, dated in the year 1783, and payable on the 1st *May* 1793. The consideration of this bond and others, was a tract of land sold by *Brand* to *Shaller*, in *June* 1781, and conveyed in 1783.

The suit was brought to *December* 1798, and in *December* 1800, an agreement was filed for "judgment, but no execu-" tion to issue, until the title of the land for which the bond " was given, should be perfected by the plaintiff." At a subsequent day the plaintiff took out execution, which the court set aside. His counsel then moved for leave to take out execution, which the court refused; but permitted a trial under the judgment, to ascertain whether the title had been perfected.

The title was brought down without dispute to a certain *Valentine Dillebaugh* the elder, who, according to the plaintiff's allegation, by his last will dated the 3d *September* 1777, devised the land in equal parts to his sons *Valentine* and *Christian*, and to his daughter *Catharine* in fee.

*Valentine* the younger and *Christian Dillebaugh*, on the 26th *February* 1778, conveyed to *Yost Brand*, who married *Catharine* the daughter; the wife of *Valentine* not joining in the conveyance.

*Yost Brand* and *Catharine* his wife, on the 1st *June* 1782, conveyed to *Christian Brand*. This deed was acknowledged on the 29th *August* 1808, before a judge of the Common Pleas for *Dauphin* county, who endorsed his certificate on the deed that the grantors personally appeared before him, " and severally acknowledged the said indenture as " their act and deed, and desired that the same might be " recorded as such; she the said *Catharine* being of full age, " separate and apart from her said husband by me examin-

The certificate of an acknowledgment by husband and wife, that an indenture was their act and deed, which they desired to be recorded as such, "she the "said (wife)being "of full age, sepa-"rate and apart "from her said "husband exam-"ined, and the "full contents "made known to "her, *voluntarily* "*consenting* "*thereto,*" is good.

A *will* of land which has accompanied the possession *thirty* years, is evidence, without proof of its execution.

A judgment,upon which it is agreed that no execution shall issue until the plaintiff has perfected the title to certain land for which the bond that supported the judgment was given, carries interest.

If the same writing that admits the survivorship of the wife, and her being still alive, asserts that she has released her dower, and it is used as evidence at all, it is evidence that the right of dower is not outstanding.

" ed, and the full contents made known to her, *voluntarily*
" *consenting thereto.*"

*Christian Brand* and *Feronica* his wife, in the year 1783,
conveyed to *Adam Shaller* in fee, and acknowledged the
deed on the 20th *April* 1808.

The first question upon the trial, which took place in *De-
cember* 1812, arose upon the proof of *Valentine Dillebaugh's*
will. It was written in *German*, with the signatures of both
*Valentine* and his wife, and subscribed by six witnesses; but
did not appear to have been ever exhibited for probate.
Notice had been served on the defendant below and his
counsel in 1805, to produce certain title papers on the trial,
and generally all papers relating to the lands; but this will
was not particularly mentioned. Under the notice certain
papers were received in *January* 1808, by Mr. *Elder* the
counsel of *Brand*, and a memorandum was taken of them,
but it did not include the will. Mr. *Elder* swore that he
could not speak with certainty as to the will, but thought
he got it then or some time after from *Shaller's* counsel.
The counsel of the defendants swore, that they had not seen
the will until the trial of the cause. The deed from *Brand*
to *Shaller* in 1783, recited that the grantor's title was de-
rived under this will; and the deed from *Valentine* and
*Christian Dillebaugh* to *Yost Brand*, recited that the father
had devised the premises to his three children equally, by
a will duly proved and recorded in the county of *Lancaster;*
but no such will was found there.

The counsel for the defendants objected to the reading
of this paper, but the Court admitted it; and in conclusion
charged the jury, that proof of the execution could be dis-
pensed with only on the ground, that it had accompanied
the possession for more than thirty years, which was a fact
for them to determine; and if it had not gone with the pos-
session, they should pay no attention to it.

The next question arose upon the certificate of acknow-
ledgment by *Yost Brand* and *Catharine* his wife, which the
defendant's counsel contended was defective as to the wife,
and therefore did not pass her estate or dower. But the
judge charged to the contrary.

A third was in relation to the dower of *Anne*, the wife of
*Valentine Dillebaugh* the younger. The fact of her having

survived her husband, and being still alive, appeared from a memorandum in the handwriting of Mr. *Elder* the plaintiff's attorney, which stated further that she had released her dower. The judge charged that the whole must be taken together, and if so, it shewed that the dower was not outstanding.

The last question related to interest on the judgment, which was objected to by the defendants, because the judgment was conditional, and it had been the plaintiff's fault that the title was not sooner made perfect. But the judge charged the jury that interest was due upon the judgment, because it was absolute, and the condition applied merely to the execution; and because the defendants had received the profits of the lands, and had never made a tender of the money nor kept it unemployed.

On all these points bills of exceptions were tendered and sealed. The exceptions were argued in this Court by *Fisher* and *Montgomery* for the plaintiffs in error, and by *Elder* and *Hopkins* contra.

TILGHMAN C. J. delivered his opinion upon the several exceptions as follows:

- 1. The defendant contends that the plaintiff was not entitled to interest on the bond subsequent to the entry of the judgment, because the judgment was conditional, or in the nature of an interlocutory judgment, and in its nature showed an intention to suspend the interest, until the title was completed. But the judgment was neither conditional nor interlocutory. It was absolute, and the condition or restraint was annexed only to the execution. Whenever the title was perfected, the plaintiff had a right to take out execution, and the judgment being for the penalty of the bond, the plaintiff might cover under it his *whole interest* and costs. The jury did not give interest from the time of the judgment on the accumulated sum of principal and interest then due according to our act of assembly, so that the defendant has no reason to complain of the least hardship, considering his case on equitable grounds. He was in possession of the land, the profits of which were equal to the interest of the money, and there was no evidence of his having kept the money lying dead for a single moment.

2. The next question is on the acknowledgment of a deed from *Yost Brand* and *Catharine* his wife to *Christian Brand*. The act of 24th *February* 1770, on which this point arises, directs that the judge who takes the acknowledgment, shall examine the wife separate and apart from her husband, and shall read or otherwise make known to her, the full contents of the deed; and if upon such separate examination she shall declare, that she did voluntarily and of her own free will and accord seal, and as her act and deed deliver the said deed, without coercion or compulsion of her husband, then the said deed shall be good and valid. It is insisted by the counsel for the defendant, that the form prescribed by the law should be strictly pursued; but such has never been the opinion of this Court. We have always declared, that it was sufficient if the law was *substantially* complied with; and on any other principle of construction, the peace of the country would be seriously affected, as the certificates of acknowledgments of deeds have generally been drawn by persons who were either ignorant of or disregarded the words of the act of assembly. The law must be complied with, but in construing it we shall always be inclined to suppose a fair conveyance if possible. Now it is here said, that the wife was examined apart from her husband, that the contents of the deed were made known to her, and she *voluntarily consented.* It is not straining the expressions " *voluntarily consenting thereto"* too far to say, that they imply, she declared that she executed the deed voluntarily, and that is sufficient; for if the execution was voluntary, it was without coercion or compulsion. I am clearly of opinion therefore that by this deed, the estate of the wife was legally conveyed.

3. The third question is on an outstanding title of dower in *Anne Dillebaugh*, supposed to be living in *Canada.* She is the widow of *Valentine Dillebaugh* jr., who conveyed his interest in this bond to *Yost Brand*, the 26th *February* 1778. There was no proof of this woman's being living or having any right of dower, except by a memorandum in the handwriting of Mr. *Elder*, in which same memorandum it is also mentioned, that she had released her right. The Court of Common Pleas were of opinion, that the contents of this paper must be taken altogether, and in this they were cer-

1814.

SHALLER
et al.
*v.*
BRAND.

tainly right, so that although it appeared, that she once had a right of dower, yet upon the whole it appeared that she had no right because she had released.

4. The last objection is to the opinion of the Court in admitting as evidence a paper purporting to be the will of *Valentine Dillebaugh* the elder, bearing date the 3d *September* 1777, by which he devised the land sold by *Christian Brand* to *Adam Shaller*, to his sons *Valentine* and *Christian* and his daughter *Catharine* equally in fee. There was no proof of this will, but it was admitted in evidence on the ground of its being a writing which had accompanied the possession of the land for upwards of thirty years. There is no doubt but that ancient deeds under which the possession has gone for thirty years, are evidence without proof of their execution, and it was decided in *Jackson* v. *Blanshan*, 3 *Johns.* 292, that in similar circumstances a will also was evidence.

In that case the Court differed in opinion, as to the time necessary to bring a will within the rule of an ancient paper. *Spencer* thought that upwards of thirty years having elapsed from the date of the will, and possession having been held under it twenty-seven years, it might be read in evidence without proof. But *Kent* Chief Justice, and a majority of the Court were of opinion that it required thirty years *possession;* and I agree with them, because although the antiquity of the writing affords some evidence in its favour, yet the main ingredient *is possession.* Both however are necessary to raise that presumption which will justify the Court in departing from the usual rule, which requires the production of the subscribing witnesses or proof of their handwriting, after accounting for their absence. This will bore date thirty-five years before it was offered in evidence, the testator had been dead upwards of thirty-four years, articles of agreement for sale to the defendant had been executed by the plaintiff, who claimed under the will, upwards of thirty years, and these articles had been followed by an actual conveyance the year next succeeding, so that possession had probably been held under this will between thirty and thirty-four years. The proof was not positive, that the will had been among the title papers delivered to the defendant, nor was it ascertained with certainty at what time the

title papers were put into the hands of the defendant. The Court thought, that sufficient evidence had been given to authorize them to permit the will to be read to the jury; and they permitted it under this restriction, that unless the jury should be of opinion that possession had gone according to the will for upwards of thirty years, they should pay no regard to it. The Court had a right to judge upon the previous matter themselves; but I do not see that they did wrong in permitting the jury to judge of it, a reasonable foundation having been first laid. And it appears that such foundation was laid, both from the strong circumstance of possession held by the defendant himself, and from recitals in ancient deeds deducing title under this will. The testator left three children, two sons *Valentine* and *Christian*, and one daughter *Catharine* the wife of *Yost Brand.* The two sons conveyed their interest to *Yost Brand*, by deed dated 6th *February* 1798, in which it is recited, that their father devised the premises to his three children equally by a will duly proved and recorded in the county of *Lancaster.* But no such will has been found on record, so that there is a mistake in that part of the recital. The deed from the plaintiff to the defendant also recites the title as derived from the same will. These are very strong circumstances. When all persons interested in the estate, declared that the will was made, particularly when the eldest son of the testator says so, who would have been entitled to one half of the land if his father had died intestate, there was surely a good foundation for suffering the paper to go to the jury in the manner that it went. Upon the whole I am of opinion that there is no error in this record, and therefore the judgment should be affirmed.

YEATES J. I fully assent to the correctness of the decisions on all the points disputed in this cause, except a single one which I shall consider in the last instance.

It has been contended, that the deed from *Yost Brand* and *Catharine* his wife to *Christian Brand*, was not effectual to convey the interest of the wife in these lands, by reason of a radical defect in the acknowledgment. If the will of her father *Valentine Dillebaugh* was established, she was entitled to one undivided third part of the lands afterwards

sold to *Adam Shaller;* but if her father died intestate, she became entitled in her own right to one undivided fourth part, her eldest brother taking two shares under the law regulating descents at the time of her father's death. It is objected, that the words of the acknowledgment by the *feme,* do not pursue the language of the act of 24th *February* 1770, but materially vary therefrom. The acknowledgment specifies, " that she was examined apart from her husband, being of ". full age, the full contents of the deed made known to her, " and that she voluntarily consented thereto." But the words of the act are, that " upon her separate examination she shall " declare, that she did voluntarily, and of her own free will " and accord, seal and as her act and deed deliver the said " deed of conveyance, without any *coercion or compulsion* of " her said husband."

The question on acknowledgments of married women, has come before this Court in three instances. *Lessee of Watson and wife* v. *Bailey et al.* 1 *Binn.* 470., *Kirk* v. *Dean,* 2 *Binn.* 350., and *M'Intire's Lessee* v. *Ward,* 5 *Binn.* 296. In the first case the consent of the wife was not expressed in the acknowledgment, but a majority of the Court were of opinion pointedly, " that a literal strict adherence to the " very words of the act, was not essentially necessary in these " cases, but the substantial requisites by which the rights of " married women were intended to be guarded by the legis- " lature, should be pursued." 1 *Binn.* 475. In the second case there was no acknowledgment whatever by the *feme.* In the last case, the Chief Justice says, " No particular form " is necessary; the words of the act need not be used, if " its directions are substantially complied with. This Court " would be departing from the line of its duty, if it were " studious to avoid conveyances by objections founded " merely upon form." 5 *Binney* 301. I shall content myself with expressing my entire concurrence in these sentiments, upon principles of public convenience and the common safety. It cannot be doubted, that a woman's voluntary consent excludes all idea of *coercion or compulsion.*

The same observations apply to the objections taken to the acknowledgment of the deed from *Christian Brand* and *Feronica* his wife, to *Adam Shaller,* as it pursues the same form. The wife here had a bare contingent right of dower, and

1814.

Shaller·
et al.
_v._
Brand.

did not claim the lands in her own right. If the true meaning of the act of 24th _February_ 1770 be, that the form pointed out thereby extends to all cases of married women executing conveyances, (concerning which however I have heretofore expressed my sentiments to the contrary) and if a rigid pursuance of that form be absolutely necessary to bar the future claims of such women, I have no scruple in declaring that the acknowledgments of more than nineteen deeds out of twenty, which I have met with since the passing of that law, would be found miserably defective. Let any one examine his title papers to lands, and pronounce on the correctness of my remarks. I need not depict the harvest of law suits, which would grow out of the establishment of the principle contended for on the part of the plaintiffs in error.

It has been objected that _Anne Dillebaugh_ the widow of _Valentine Dillebaugh_ deceased, has not released her dower in these lands. The reasoning of the President upon this point is satisfactory to my mind. Her surviving her husband only appeared by a written memorandum taken by Mr. _Elder_ one of the counsel of the defendant in error, and the same paper shews, that she actually executed a release. The whole memorandum like the confession of a party must be taken into consideration, as well what operates favourably as adversely to him. The paper therefore which creates the objection removes it fully.

As to interest, it is the natural consequence of the obligation after it became due by its condition, unless it is otherwise specially provided for. Such provision is inferred from these terms. " _December_ term 1800 judgment, but no exe" cution shall issue, until the title of the land for which the " bond was given, shall be perfected by the plaintiff." But the terms here go to the execution only. I cannot see how it supersedes the payment of interest thereafter growing due, nor can I perceive on what reasonable ground the plaintiffs in error could avail themselves of an exemption from interest. They and their ancestor quietly held the undisturbed possession of the lands since 1783, and received the profits; and it does not appear, that they lost any opportunity of making an advantageous sale of the lands, or that any money lay dead in their hands, which had been

*bona fide* appropriated to discharge the bond. *Sugden's*
*Law of Vendors* 320.

The only question which remains to be considered, is the propriety of admitting the will of *Valentine Dillebaugh* in evidence, under the facts stated in the bill of exceptions, to which we are confined. [His honour then detailed those facts.] No evidence was previously given how the possession had gone of the land, or how long the papers which had been received had been in the hands of the counsel of *Brand.* The will wears the appearance of originalness, but no account was given where it was found, or in what manner it came into the hands of *Brand's* counsel immediately before the trial. It is perfectly obvious, that if the general rule of evidence is to be dispensed with on account of an instrument coming out of the hands of the adversary, such possession should be unequivocally proved, which is far from being the case in the present instance. It cannot be presumed, that an original will goes with the title papers into the hands of a purchaser. It is the duty of the devisees or executors to have it filed in a public office, and then proved.

The modern law of *England* is said in some cases to be, that if the party to whom notice has been given to produce an instrument, produces it accordingly, the other party is entitled to read it without further evidence. *Peak* in his *Law of Evidence, page* 109, remarks, that against the *party to it,* there seems to be no possible objection to this rule, for he must know whether he ever executed such an instrument or not, and the plaintiff not knowing who were the subscribing witnesses, cannot be prepared to prove the execution. In one case this rule was extended to third persons, into whose hands an indenture was delivered; but this decision has been doubted by very high authority. The case was much questioned at the time, and has since been overruled. It is plain that this will was not the act of *Shaller.*

I am not aware upon the most diligent search, of any *English* case before the *American* revolution, which decides on the present subject of enquiry, nor of any particular instances, wherein the doctrine has been examined within this state. We are therefore obliged to recur to the general principles of the law of evidence, and the analogy of other

1814.

SHALLER
et al.
*v.*
BRAND.

decisions, as applicable to this cause under all its circumstances. It will be admitted that the technical rule of requiring instrumental witnesses to prove their attestations, is founded on sound policy, though it may subject the parties to inconvenience. The ground of relaxation is, that the parties not knowing the names of the witnesses, cannot possibly be prepared to produce them at the moment of trial. But here, this will, if delivered over by the vendees to the vendor, was known to his counsel in *January* 1808; and the recitals in no less than three of the deeds, specifying that the children claimed under the will, they would naturally be led to examine such will, which if not proved and remaining of record at *Lancaster*, might be established by the subscribing witnesses. The ground for relaxing the rule, if it held here as it is said to do in *England*, must fail the defendant in error under the circumstances of the case.

But the Court, after having permitted the will to be read to the jury under all the circumstances which have been given in evidence, tell them that proof of the execution could be dispensed with only on the ground, that it had accompanied the possession of the land for more than thirty years; that this was a fact for the jury to determine upon; and if it had not gone with the possession during that period, they should not pay attention to it. This is placing the will upon the same footing as an ancient deed, and the Supreme Court of *New York* in *Jackson* v. *Blanshan*, 3 *Johns*. 292, have so decided. But the proofs of continual possession should have preceded the shewing of the will in evidence. It was so done in that case, and *Kent* Chief Justice remarks, that it is the accompanying possession alone, which establishes the presumption of authenticity in an ancient deed. Where presumption fails, the presumption in its favour fails also. It appeared then that one of the subscribing witnesses was dead, another was *non compos*, and the third lived at *Poughkeepsie*, and no reason was shewn why he was not produced. The omission was called a fatal negligence on the part of the plaintiff. The will was proved in *Ulster* county shortly after the testator's death. A paper cannot be read, because it is dated back thirty or forty years, or because it carries with it the appearance of time.

I know of no case in the *English* books, which goes the

length of *Jackson* v. *Blanshan,* nor has any such instance occurred in this state. No account whatever was given of this paper.

I can see a material difference in a change of possession following the alienation of lands, and continuing for thirty years and upwards, and children claiming by will of their father, succeeding to his estate upon his death. Taking the fact for granted which is stated in the conveyances from *Valentine* and *Christian Dillebaugh,* and from *Yost Brand* and *Catharine* his wife, that the two former and the said *Catharine* were the children of the supposed testator, and came into possession of the lands (the subject of controversy) upon the death of their father, we cannot infer from thence that they came in under the will of their father; for their possession may be equally referrible to a claim by descent, and would be equivocal in this particular. The charge of the Court was incorrect in stating, that if *Valentine Dillebaugh* had died intestate, his estate would have descended to his two sons and daughter, as under the will, in *equal proportions;* because the laws of descent in 1778 gave to the eldest son two shares.

The question upon this bill of exceptions is not, whether the children would be barred by their conveyances, but whether legal evidence of this will was given, as part of the chain of title previous to the same being shewn to the jury. I have no hesitation in saying that the vendor had a good title to the lands, and would be entitled to the consideration money on making the proper proofs. But it is of the utmost importance, that the rules of evidence should be adhered to, and thinking as I do, that this will went to the jury without the requisite proof in the first instance, I am constrained on that ground alone, without the slightest reference to the merits of the case, to declare my opinion that the judgment of the Court of Common Pleas should be reversed, and a new trial be awarded.

BRACKENRIDGE J. We say of ore sometimes, that it is good, but that it requires a great deal of digging for it. So in this argument we have a great deal of trouble to get at the facts of the case. This is owing to the late and novel manner in which bills of exceptions are taken, and brought

1814.

SHALLER
et al.
*v.*
BRAND.

before the court. There is no statement of the facts in evidence introductory to the exceptions, and upon which they arise. They are to be collected from the docket entries, and the notes of the judge on the trial, containing the whole evidence, out of which we are left to collect what may lead to the exceptions. It is looking for a needle in a bundle of hay. What will become of the records, loaded with such husks, instead of the kernel and substance of testimony? Will the notes of the judge become a part of the record, and be evidence to a jury in another cause?

But laying considerations of this kind out of the question, I come to consider what I can collect to be the ground of exception here. I will pass over what does not seem to have been made a ground of exception, viz. the want of a *substratum* or foundation of the whole proceedings; the judgment opened so far as to let in a trial, or a *scire facias* on the judgment. A *venire* without this has no bottom. I take up the exception as to the acknowledgment of the deed. Had it been a new case, I would have taken one of the extremes, either that a certificate of the acknowledgment as evidence need not specify more than that it was acknowledged, or that it should pursue the words of the act of assembly in form as well as substance. For between these two, there will be much room for litigation as to what shall be considered *substance.*

" *Iliacos intra muros peccatur et extra.*"

But take the rule to be that the substance shall suffice, I admit the substance to be here, and the acknowledgment to be good.

It will not be understood that I approve of the decision in *Watson* v. *Bailey.* It was contrary to my judgment. I did not sit in that case, but I heard one of the two judges that decided it, Judge *Smith,* then in a low state of health, say, that he acquiesced only under the distinction, that it was to be confined to a case of the *feme covert's* lands, which she held in her own right before marriage; and I take it that Judge *Yeates* took it with the same distinction. But I thought that such a distinction could not avail, and that it would be overruled when it came in question. In a subsequent case such distinction was ruled not to exist. In consideration of a *communis error*, if it was one, and that estates were holden

1814.

SHALLER
et al.
*v.*
BRAND.

where certificates *of acknowledgment* fell short of a recital of the words of the act of assembly, which I take to have been *directory* to the officer, I would have held it good. I would have thought that a certificate that the writing had been acknowledged by the *feme covert* in *due form of law*, as was the case there, or *according to the act of assembly in that case made and provided*, was sufficient. I would have applied the maxim, *omnia rite et solemniter acta præsumuntur*. The officer is presumed to obey his instructions, and to do his duty.

As to the admission of the will in evidence, I am perfectly satisfied that it was correct, being on the footing of an old deed, that had come with the possession thirty years; and that it had come with the possession thirty years was decided by the jury, for it was on finding that fact, that they were directed to consider it as evidence.

As to the release I am also of opinion with the judge below, and as to interest the same. I think him in all these matters abundantly correct, and affirm the judgment.

Judgment affirmed.