(Jamison v. Jamison.)

---

## JAMISON against JAMISON.

### IN ERROR.

1. The certificate of the judge or justice as to the acknowledgment of a deed by a married woman is to be judged of solely by what appears on the face of the certificate itself; and parol evidence of what passed at the time of the acknowledgment is not admissible for the purpose of contradicting the certificate, except in cases of fraud and imposition.

2. An indenture of mortgage between A. and B. recited, that A. was in-debted in a certain bond to B., and in consideration thereof, and of one dollar to *him* paid, &c., *hath* granted, &c., and *doth* grant, &c. a certain tract of land, (describing it,) together with the appurtenances, and all the estate, right, title, &c., in them the said *A. and S.* his wife, of, in, and to the same: *Habendum* to the said B. his heirs and assigns: pro-vided, that if the said *A. and S. his wife*, or their heirs, executors, &c. shall pay the amount of the bond at the time appointed, then the inden-ture to be void, &c.    The deed was signed and sealed by both husband and wife, and acknowledged by both, and as respects the wife, after a separate examination, &c.    The land mortgaged was the estate of

(Jamison *v.* Jamison.)

the wife : *Held,* that the deed was sufficient to pass the estate of the wife.

3. A mortgage of the wife's real estate executed by husband and wife to secure a debt of the husband, and acknowledged by the wife in the manner required by law in respect to absolute conveyances, will bind the estate.

4. A certificate of an acknowledgment of a deed by a married woman stated that " she being of full age separate and apart from her husband by me examined, declared that she did voluntarily of her own free will and accord, seal and acknowledge the within indenture without coercion of her said husband, the contents being by me first made known to her": *Held,* that this was sufficient.

THIS was a writ of error to the Court of Common Pleas of Montgomery county.

On the return of the record, it appeared that a writ of *scire facias* issued out of that Court to January term 1834 at the suit of Robert Jamison, against Syndonia Jamison, who survived Hugh Jamison, upon a mortgage dated the 31st day of January, 1827, executed by the said Robert Jamison and Syndonia Jamison.

The defendant pleaded *non est factum* and payment, with leave to give the special matter in evidence, &c.

The cause came on for trial before Fox, President, on the [*458] 24th *of May 1836, when the plaintiff to maintain the issue on his part, called James Cummings, to prove the execution of the mortgage on which the *scire facias* issued ; who being duly sworn testified as follows :—" I am a subscribing witness to the mortgage. I saw Syndonia Jamison execute the mortgage. I saw Hugh Jamison execute the mortgage also. Michael Rapp the other subscribing witness is dead. I am a justice of the peace. The mortgage was acknowledged before me, as a justice of the peace, by Hugh Jamison and Syndonia Jamison. I took the acknowledgment." And on being cross-examined he testified as follows :—" This transaction took place at the house of Hugh Jamison. Syndonia Jamison was examined before it was acknowledged. Her husband was then unwell and in bed. I took her out of the room from her husband. She said it was done of her own free will and accord, and that she had at first proposed it. This was before she signed it. We then went back in the room and they both signed it. I read it to both in the hearing of the husband and wife before I took her out of the room. When we went back in the room they both signed it, and I took the acknowledgment in the room with her husband. I took the acknowledgment of them both in the room in the presence of each other. John Jamison the brother of the plaintiff, the plaintiff, and Michael Rapp the other witness, were in the room when I took the acknowledgment. Robert Jamison

(Jamison *v.* Jamison.)

took possession of the mortgage before we left the room, after · giving them the money. I think the mortgage remained in my possession till they got the matter arranged. This was not long, not half an hour. I think it was ten minutes. I think it was only while they were counting out the money it remained in my possession, or perhaps it might have remained on the table. There was nothing done by Syndonia Jamison except signing the mortgage, that I recollect of. Robert Jamison took possession of the mortgage before Syndonia Jamison left the room. The acknowledgment of Syndonia Jamison which I took was in the room where she signed it. They lived in the room. Hugh Jamison was in bed. He sat upon the side of the bed to sign it. He was sick, he never got well after that. I don't know who counted the money. I can't tell how much money was counted. There was a note that Robert Jamison had against Hugh Jamison that went in part, but I don't recollect what amount. This transaction was in the evening after candle-light. When I took the acknowledgment of Mrs. Jamison she stood along side of the bed. The land on which the mortgage was given was the land she inherited of her father. The money was paid down on the table, I believe, and a request made by Syndonia to John Jamison and myself, that we should take a part of it and pay it to the sheriff. We did so. I have not a recollection how much we took. The sheriff had an execution against Hugh Jamison. The acknowledgment of the mortgage I have mentioned, was when Hugh Jamison was sitting *on the side of his bed [*459] and Syndonia standing by it. There was no other taken after the execution of the mortgage. There was no other acknowledgment of the mortgage by Mrs. Jamison excepting the one in the entry before we went in to sign it. The acknowledgment by the bedside was that of Hugh Jamison and Syndonia also. There is an acknowledgment on the mortgage in writing, signed by me. I can't say positively when the mortgage was delivered to Robert Jamison; can't be positive in regard to who delivered it to him. Mrs. Jamison was up and took an active part. Her husband was not out of bed. . I wrote the mortgage. Robert Jamison first spoke to me to write it."

The defendant's counsel then proposed to ask the witness "what was the form of the acknowledgment of Syndonia Jamison?" which was objected to by the plaintiff's counsel, and overruled by the Court. Whereupon the defendant's counsel excepted.

The plaintiff's counsel then offered the mortgage in evidence, which was objected to by the defendant's counsel, but admitted by the Court, and exception taken.

The mortgage was in the following words :—

(Jamison *v.* Jamison.)

"This indenture made the thirty-first day of January, in the year of our Lord one thousand eight hundred and twenty-seven, between Hugh Jamison of Warwick township, in the county of Bucks in the state of Pennsylvania, (yeoman,) of the one part, and Robert Jamison of the township and county aforesaid, (yeoman,) of the other part. Whereas the said Hugh Jamison in and by a certain obligation or writing obligatory under his hand and seal duly executed, bearing even date herewith, stands bound unto the said Robert Jamison in the sum of six hundred and fifty-two dollars lawful money of the United States conditioned for the payment of three hundred and twenty-six dollars lawful money as aforesaid, together with lawful interest for the same, on or before the first day of April, one thousand eight hundred and twenty-eight, without any fraud or further delay, as in and by the said recited obligation and condition thereof, relation thereunto being had may more fully and large appear. Now, this indenture witnesseth, that the said Hugh Jamison as well for and in consideration of the aforesaid debt or sum of three hundred and twenty-six dollars, and for the better securing the payment thereof, with its interest, unto the said Robert Jamison, his executors, administrators, and assigns, in discharge of the said recited obligation, as for and in consideration of the further sum of one dollar unto him in hand well and truly paid by the said Robert Jamison, at and before the sealing and delivery hereof, the receipt of which one dollar is hereby acknowledged, hath [*460] granted, bargained, sold, released, and confirmed and *by these presents doth grant, bargain, sell, release and confirm unto the said Robert Jamison, his heirs and assigns, all that parcel and tract or tracts of land situate," &c. [Here the description of sixty-five acres sixty-one perches of land is inserted, with the recitals of title, recording, &c.] "Together with all and singular the buildings, woods, ways, waters, water-courses, rights, liberties, privileges, improvements, hereditaments, and appurtenances whatsoever thereunto belonging or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, use, possessions, property, claim and demand, whatsoever of them the said Hugh Jamison and Syndonia his wife, of, in, to or out of the same. To have and to hold the said described sixty-five acres and sixty-one perches of land, hereditaments and premises hereby granted or mentioned so to be, with the appurtenances unto the said Robert Jamison and to his heirs and assigns to the only proper use and behoof of the said Robert Jamison and to his heirs and assigns forever: Provided always, nevertheless, that if the said Hugh Jamison and Syndonia his wife or their heirs, executors, administrators, or assigns, do, and shall well and truly pay,

(Jamison *v.* Jamison.)

or cause to be paid, unto the said Robert Jamison or to his executors, administrators, or assigns, the aforesaid debt or sum of three hundred and twenty-six dollars like money as aforesaid, on the day and time thereinbefore mentioned, and appointed for payment thereof, together with the lawful interest for the same, without any fraud or further delay, and without any deduction, defalcation, or abatement to be made of any thing, for, or in respect of any taxes, charges, or assessments whatsoever, then, and from thenceforth, as well this present indenture, and the estate hereby granted, as the said recited obligation, shall cease, determine, and become void, any thing thereinbefore contained to the contrary thereof in anywise notwithstanding. In witness whereof, the said parties to these presents, have interchangeably set their hands and seals hereunto. Dated the day and year first above written.

HUGH JAMISON, [L. S.]
SYNDONIA JAMISON, [L. S.]

Sealed and delivered, in
in the presence of us,
JAMES CUMMINGS,
MICHAEL RAPP."

Certificate endorsed—

"Bucks county, ss. The thirty-first day of January, 1827, before me the subscriber, a justice of the peace, in and for the county of Bucks, came and appeared the within-named Hugh Jamison and Syndonia his wife, and acknowledged the within indenture of mortgage to be their and each of their act and deed, and desired *that the same might be recorded as such [*461] according to law. The said Syndonia being of full age, separate and apart from her husband by me examined, declared that she did voluntarily of her own free will and accord, seal and acknowledge the within indenture of mortgage, without coercion of her said husband, the contents being by me first made known to her.

Witness my hand and seal the day and year aforesaid,
JAMES CUMMINGS."

(Recorded February 1st, 1827, at 1 o'clock P. M. (Book 17, p. 50.)

The defendant's counsel having read the notice of special matter which had been given to the other party, called Abraham Clayton who testified as follows:—

"I am acquainted with the lands mentioned in the mortgage. One part about fifty-four acres she inherited from her father. The other part about fifteen acres she inherited from her mother's estate. There are no improvements on the property. Hugh

(Jamison *v.* Jamison.)

Jamison made no improvements on it. I don't know who received the rents."

After examining several witnesses in relation to the capacity of Syndonia Jamison to execute a contract at the time of the date of the mortgage, the counsel for Syndonia Jamison offered to prove by James Cummings, Esq. whose name is subscribed to the certificate of acknowledgment, "That the said Syndonia Jamison never acknowledged the said mortgage on which the said writ of *scire facias.* issued, after the execution thereof, separate and apart from her husband, and did not acknowledge the same as set forth in the certificate of acknowledgment endorsed on the said mortgage, nor make the declarations specified therein;" which evidence was objected to by the plaintiff, and overruled by the Court. The opinion of the Court was then excepted to.

The plaintiff having examined several witnesses to rebut the testimony on the other side, in relation to the capacity of the defendant—

The Court then charged the jury; and the following part of the charge was excepted to.

"It is said there is no proof that James Cummings was a justice of the peace when he took the acknowledgment. The Court say there is proof sufficient that James Cummings was a justice of the peace. We therefore lay it down that the certificate of acknowledgment endorsed on the mortgage is conclusive evidence that Syndonia Jamison acknowledged the same as therein set [*462] forth, *and that the certificate is in due form of law, and sufficient to convey and pass her estate in the lands mortgaged, and as to this the plaintiff may recover;" which charge was excepted to and a fourth bill of exceptions sealed.

The jury found for the plaintiff; and the defendant having removed the record to this Court, assigned the following errors.

"1. The Court erred in overruling the question propounded by the defendant's counsel as mentioned in the first bill of exceptions.

2. The Court erred in admitting the mortgage and certificate of acknowledgment endorsed thereon in evidence to the jury.

3. The Court erred in refusing to admit the testimony of James Cummings, Esq., offered by the defendants as mentioned in the third bill of exceptions.

4. The Court erred in charging the jury that there was sufficient evidence that James Cummings was a justice of the peace; that the certificate of acknowledgment endorsed on the mortgage was in due form of law; and that it was conclusive evidence that Syndonia Jamison acknowledged the mortgage as required by law, and sufficient to bind her estate in the lands mortgaged; and that the plaintiff might recover."

(Jamison v. Jamison.)

Mr. *Sterigere*, for the plaintiff in error.

The questions raised by the record in this case, embraced in the errors assigned, are—

1. Whether a *feme covert* can bind her own estate by mortgage.

2. Whether Syndonia Jamison is a party to the mortgage on which this *scire facias* issued, and the mortgage be in such form as will bind her estate.

3. Whether the certificate of acknowledgment, on its face, is sufficient to convey or bind her estate.

4. Whether the parol evidence of the justice was competent under the notice of special matter, to prove his appointment.

5. Whether the certificate of the justice who took the acknowledgment was conclusive evidence that Syndonia Jamison acknowledged the mortgage, separate and apart from her husband, after the execution thereof, and made the declarations specified in the certificate; or only *prima facie* evidence of the same and may be inquired into.—And

6. Whether, when the testimony of the justice is received without objection, it is to be disregarded, by the direction of the Court, and the certificate taken as conclusive evidence of the facts set forth therein, in opposition to such testimony contradicting the certificate.

1. At common law, a married woman cannot alien her lands, *nor bind her interest in them, except by fine; and all her acts during coverture are void. 1 Black. Com. 444; [*463] 1 Penn. Blac. 223, 404; 8 Serg. & Rawle, 303. In this state, she cannot convey or bind her lands in any other manner than that prescribed by the act of 1770. 2 Binn. 341. This act only authorizes the " estate of the wife," " which she shall incline to dispose of," to be " passed and conveyed," by a " deed or conveyance," " for the lands, tenements and hereditaments intended to be passed and conveyed;" acknowledged according to the act. Pur. Dig. 252, (16.) The idea of " conveyance" embraces a transfer of that title, not to return; and " deed," an absolute assignment of title and possessory right. 2 Penn. Rep. 23. A mortgage is not within the meaning of the act. The mortgagor continues to be the owner of the lands mortgaged. The mortgagee has no interest in them. His interest cannot be bound by a judgment, nor taken in execution. A mortgage is only a *chose in action*—a mere evidence of a debt, or security for the payment of money. 4 Rawle, 255; 1 Rawle, 325, 328, 355, 356; 3 Penn. Rep. 244; 2 Rawle, 66; 1 Binn. 177; 1 Serg. & Rawle, 317; 7 Serg. & Rawle, 419; 9 Serg. & Rawle, 303; 11 Serg. & Rawle, 223; 4 Kent's Comm. 153; 2 Penn. Rep. 23. If an instrument is in substance only evidence of, or security for a debt, and in law transfers no interest in lands, it is immaterial

(Jamison *v.* Jamison.)

what form or name it may have. A mortgage of husband and wife is therefore a mere contract or promise for the payment or security of money, and so far as she is concerned, rests on no better footing than a bond, note, or joint promise made during coverture, for the payment of money; none of which could be enforced against her after her husband's death. 2 Penn. Rep. 410, 49; 1 Watts, 229. It has never been decided by this Court, that the mortgage of a *feme covert* will bind her lands after her husband's death. Such a decision would be in conflict with all the cases referred to. [GIBSON, C. J. It has been decided that a mortgage executed by a woman during coverture will bind her lands.] None of our books contain any such case. No such decision has been reported. I have made the most diligent search in my power, and have been unable to find any thing of the kind in the books. If the question has been determined by this Court, I will not pursue the argument. [ROGERS, J. The question has been decided.]

2. If a *feme covert* may bind her lands by mortgage, I contend that Syndonia Jamison is not a party to the mortgage on which the *scire facias* issued. She is not named in the premises, nor joined with her husband in the operative words, or granting part of the instrument. She must be joined with him in conveying a title which proceeds from her. No grant has been made by her, nor has she agreed to grant any thing. In deeds, all matters must be legally set out. 2 B. C. 297–8. The forms which the wisdom of ages has settled must be observed. A deed does [*464] not operate in *favour* of one *who is not named in the premises, or operative clause of the grant. "If. the thing granted be only in the habendum, and not in the premises the deed will not pass it." 1 Shep. Touchstone, 76; 4 Cruise on Real Property, tit. 32, chap. 3, sec. 44, 51–52; 3 Preston on Abstracts of Title, 25, 41, 43; 7 Petersdorff's Ab. 676. For the same reason, a deed will not operate against one not named in the premises, nor the thing mentioned pass from him. The words must import a grant. If a married woman sign and seal a deed with her husband in which her name if not otherwise mentioned, it does not bar her right of dower. 9 Mass. Rep. 220. If the wife's name be mentioned in the conclusion of the deed only, she will not be barred of her dower. 13 Mass. 223. These cases are decisive of the present question. In the case of *Lithgow* v. *Cavenagh*, (9 Mass. Rep. 161, 172,) the deed in which the wife's name was not otherwise mentioned, which was duly acknowledged, had the following conclusion: "I, the said A., and S. my wife, in token of her full, free, and entire relinquishment of all her right to the said granted premises, have hereunto, set our hands and seals," and it was *held*, that this was no con-

(Jamison v. Jamison.)

veyance of the wife's interest in the lands.   This case goes much further than the one before the Court requires.   The words of the deed must import a grant by the wife.   No words importing a consent only will bind her.   If the principles on which the cases cited rest, be sound, the mortgage in this case is no conveyance, and is insufficient to pass or bind the estate of Syndonia Jamison.

3. We also contend, that the certificate of acknowledgment, on its face, is defective, and insufficient to bind the estate of Mrs. Jamison.   The act requires, that the *feme covert*, on her separate examination, (besides other things,) shall "declare that she did voluntarily and of her own free will and accord, seal, and as her act and deed deliver the said deed or conveyance," &c., without any coercion or compulsion, &c.   Purd. Dig. 252, (16).   And this must be certified by the officer taking the acknowledgment. 1 Watts, 322.   Deeds of *feme coverts*, so acknowledged and certified, are declared to be valid.   Of course, all others are void. In this certificate, the word "acknowledged" is substituted for the words "as her act and deed delivered."   These words are a substantial part of the act.   It does not appear by the certificate, that the wife declared that she "as her act and deed delivered" the mortgage, as required.   Delivery is absolutely essential to the validity of a deed.   This is the reason this declaration is required.   "Acknowledged" is not synonymous with or equivalent to, the words omitted.   If this word will imply delivery of the deed, it will also as well imply the several other requisites of the act, the omission of any one of which has always been held to be fatal.   1 Binn. 470, 480; 4 Serg. & Rawle, 272; 6 Serg. & Rawle, 49, 145; 8 Serg. & Rawle, 303; 9 Serg. & Rawle, 268; 10 Serg. & Rawle, 446; 14 Serg. & Rawle, 84; 15 Serg. & Rawle, 72.   There is no case in which the words omitted have been *dispensed with.   In *M'Intire* v. *Ward*, (5 Binn. [*465] 296,) which goes further than any other case, the words "acknowledged the premises to be the right of the grantee" were held sufficient.   This case has never been approved of, and was for a long time considered by the profession as overruling *Watson* v. *Bailey*, (1 Binn. 470).   In *Watson* v. *Mercer*, (6 Serg. & Rawle, 49,) the Court declared, that but for the practice and authorities they would adhere to the letter, and would not go beyond the cases determined.   To sustain this certificate, the Court must go much further than *M'Intyre* v. *Ward*, or any other precedent, and conflict with the principles settled in *Watson* v. *Mercer*.

4. The parol testimony of James Cummings of his appointment as a justice, when he took the acknowledgment, was incom-

(Jamison *v.* Jamison.)

petent under notice given. The best evidence (his commission) ought to have been produced.

5. If the certificate of acknowledgment is on its face not defective, we contend it was only *prima facie* evidence of the facts set forth in it, and not conclusive; and that the Court erred in overruling the testimony of the justice who took the acknowledgment, who was offered to prove that Mrs. Jamison did not acknowledge the mortgage after its execution, separate and apart from her husband, nor make the declarations specified in the certificate. The law requires, not only that the certificate should set out that the *feme covert* was separately examined, &c., but also, that the examination shall in fact be separate. Both are required. The law is mandatory; and is as plain as is positive. A deed of husband and wife, not separately acknowledged by the wife, is void against her. 10 Serg. and Rawle, 446. This requisite has been interposed by the law for the protection of the wife's rights, and cannot be dispensed with. 4 Serg. & Rawle, 272–274. " A married woman cannot convey her land in any other manner than is prescribed by our acts of assembly." 8 Serg. & Rawle, 303. " A separate examination is essential." The law protects a married woman by giving her " an opportunity of disclosing her mind to the magistrate, out of the presence of her husband. The act therefore directs this examination of the wife to be separate and apart from her husband; and in this the magistrate has no discretion." 9 Serg. & Rawle, 273, 274. " A wife is not barred of her dower, if she is not separately examined." 5 Serg. & Rawle, 289. Our books are full of decisions to the same point. By the whole current of decisions in this Court, supported by unanswerable reasoning, it is settled, that a separate examination in fact, is indispensable to bar a married woman's rights in land. No contradictory authority can be produced. Hence it follows, that the certificate is only *prima facie* evidence; that the fact may be inquired into; and it is error in the Court to refuse such evidence. Neither the acts of assembly, nor the authorities, confine *us to the certificate. [*466] To make certificates conclusive, would be to commit the rights of *femes covert* to the mercy of every ignorant magistrate, and give them a discretion in a matter in which this Court has declared " the magistrate had no discretion." The guards which the law has provided for the protection of the rights of married women, would then be rendered a mere mockery, and, in the words of the present Chief Justice, (*Evans* v. *Commonwealth*,) the Court might as " well dispense with the separate examination altogether." The time of the examination is also as material as the manner. The act requires the examination to be taken " after" the execution of the deed. If taken

(Jamison v. Jamison.)

in fact before, it will not avail.  If a law requires that a jury shall view after being sworn, it is fatal to their proceedings to view before they are sworn; because "the law is so written." 2 Penn. Rep. 207.  For the same reason this also may be inquired into.  This Court has never allowed the defect of a certificate to be supplied or patched up by parol evidence; because, if the acknowledgment was proven to have been in fact taken correctly, the certificate, which the law requires should contain all the particulars, would still be defective, and the deed void against the wife.  But it has never been settled, that you shall not impeach the certificate of acknowledgment; that is yet undetermined.  There is nothing in the way to overturn, review or modify.  In none of the cases in our books, except *Jones* v. *Maffit*, (5 Serg. & Rawle, 523,) was there any attempt to prove that the facts were untruly certified.  Why may you not impeach the certificate of the justice?  There is nothing sacred in it: it is not a record.  To make it conclusive, will be to deprive a married woman of all protection, in regard to her property. In the language of the Court, (10 Serg. & Rawle, 378,) in relation to the certificate of a notary public, "it would be highly dangerous, and going far beyond the object of the legislature, to declare it to be conclusive."  A notary public is appointed and commissioned in the same manner, and holds his office on the same tenure, a justice does.  He is required to keep a register of all his acts.  His official seal must have the arms of the commonwealth engraved on it, and other devices.  Yet it is only *prima facie* evidence, and may be impeached and contradicted. 10 Serg. & Rawle, 378.  And the notary himself may be compelled to testify against the statement of his certificate, and contradict the facts set forth therein.  12 Serg. & Rawle, 284.  A justice is not required to keep a register of such acknowledgments; and none is kept.  He is not required to have an official seal.  Justices use only a private or ink seal, and generally only a scroll or flourish of the pen is attached to their certificates. On a comparison in every particular, their certificates would seem to be entitled to much less regard than those of notaries. If a notary's certificate may be contradicted, *a fortiori*, a justice's may.  The justice was the most proper person to testify to the transaction, because the particular *circumstances, in almost every instance, must rest exclusively in the knowl- [*467] edge of the officer.  10 Serg. & Rawle, 378.  The certificate should not be make conclusive, but on considerations of public policy, and only in cases in which *bona fide* purchasers without notice, or third persons, had become interested.  The same reasons would not hold where the original parties are concerned. *Caveat emptor* applies as well to such a case as this, as to any

(Jamison v. Jamison.)

other. A grantee or mortgagee is as much bound to see to his title in this particular, as in any other. "If he will not look to his title, he must suffer." 6 Serg. & Rawle, 51. Here the mortgage has not passed out of the hands of the mortgagee, who was not only bound to know, but in fact witnessed the whole transaction.

But this question seems to have been settled in the case of *Jones* v. *Maffit,* (5 Serg. & Rawle, 523, 534, 535,) in which parol evidence was admitted to prove that the examination of the wife was not in fact separate, although so certified; but the party failed in his proof. Upon the evidence, (the Court say,) "the examination was separate and apart from the husband. There was no evidence that he was in such a state that he could hear the examination." There was no evidence that contradicted the certificate. The validity of the deed was put on that fact. Only a *prima facie* import was given to the certificate—not a word about its conclusiveness. The Court also say, "if there had been any evidence that the magistrate designedly permitted the husband to be present, to intimidate the wife, it would have effected the acknowledgment." Here the husband was permitted to be present, under circumstances well calculated to intimidate. Upon the principles of the cases cited, the defendant below had a right to impeach and contradict the certificate; and the Court erred in overruling the testimony offered for that purpose.

6. The Court also erred in charging the jury to take the certificate as conclusive evidence of the separate examination of the wife, and other facts set forth in it, and to disregard the testimony of the justice, received without objection, which contradicted and disproved the statements set forth in the certificate. This was directing the jury to be governed by what was proven to be false.

As to the assent, which it is intimated Mrs. Jamison has given to the mortgage, that is nugatory. A *feme covert* can give no consent, nor do any act which will bind her or her lands, except in the manner provided by law. 9 Mass. Rep. 172, 220; 13 Mass. Rep. 223. Nor would a chancellor carry into effect any deed on such grounds, in opposition to the positive enactments of the legislature. Dower and all the interests of married women have been favourites of the law. Our legislature and Courts have always shown a disposition to protect their interests against the rapacity of their husbands and their creditors. The current of legislation still runs strong in this way. The law now [*468] does not allow the proceds of the real estate *of the wife's ancestors to be paid to him, until she goes before a judge of the Court—not a justice of the peace—and makes a declaration of her voluntary consent, which is to be filed of record.

(Jamison *v.* Jamison.)

This court will not retrograde, nor set up a judicial decision against these judicial principles and the spirit of all our legislation.    The necessity of some more adequate provision for the protection of the property of *femes covert*, and to restrain the husband from getting possession of the wife's estate, has often been intimated from this bench, and that in some instances it was not a matter of regret that some circumstances merely formal were omitted, that saved the wife and family from rapacity.    In this case there is enough both formal and substantial to save this woman from poverty.    4 Serg. & Rawle, 272, &c. ; 6 Serg. & Rawle, 50, &c. ; 9 Serg. & Rawle, 273, &c.    If there is not, we may despair of any protection or remedy under the law.

Mr. *Freedly* and Mr. *B. Tilghman, contra,* were requested by the Court to confine themselves to the questions, (1st) Whether Mrs. Jamison was a party to the mortgage ; and (2nd) Whether the acknowledgment could be disproved by parol evidence.    They cited *Watson* v. *Bailey,* (1 Binn. 470); *Jordan* v. *Jordan,* (9 Serg. & Rawle, 373); *Barnet* v. *Barnet,* (15 Serg. & Rawle, 73); *Milligan* v. *Dickson,* (1 Peter's Rep. 434); 3 Bac. Abr. p. 217, tit. Fines, H. Dyer, 89, b. ; Rolle's Abr. 757.

Mr. *Mallery* was heard in reply.

The opinion of the Court was delivered by

SERGEANT, J.—The first and third bills of exceptions, and a portion of the charge of the Court, raise the question, whether the certificate of the justice of the peace of the acknowledgment by the husband and wife, was conclusive as to all matters legally contained in it, so that the defendant was not at liberty to prove by parol evidence, that the mortgage was not acknowledged by her before the justice, in the manner it purports to have been, and thus destroy its validity.    This point has not perhaps been expressly ruled, but the principle has been repeatedly recognised, that the certificate of the judge or justice, as to the acknowledgment of a deed by a married woman, is to be judged of solely by what appears on the face of the certificate itself; and that parol evidence of what passed at the time of such acknowledgment, is not to be received, except in cases of fraud and imposition.    In *Watson* v. *Baily,* (1 Binn. 470,) the acknowledgment being held to be defective and not to pass the estate of the wife, the defendants offered to produce evidence of parol declarations by the wife, that she executed the deed voluntarily ; and that if it was not sufficient, *she would execute and acknowledge it over again, or do any other act to make the thing good.    The [*469] evidence was held to be inadmissible.    This case was recognised,

(Jamison *v.* Jamison.)

and the same decision made in *Jordan* v. *Jordan,* (9 Serg. & Rawle, 268). "There would be no certainty in titles," says Tilghman, C. J., "if that kind of evidence were permitted. The law directs the magistrate to make his certificate in writing, and he has made it. To that the world is to look and to nothing else." And again in *Barnet* v. *Barnet,* (15 Serg. & Rawle, 73); he says, "The third error assigned, is in the rejection of parol evidence offered by the defendant, to prove that when the demandant made her acknowledgment, she knew the contents of the deed, and received eight dollars from F. Barnet for executing the deed. That such evidence was inadmissible, was decided by this Court in the case of *Watson* v. *Baily.* There may be cases of gross fraud in which parol evidence would be received, unless the land had passed into the hands of a purchaser for valuable consideration, without notice of the fraud." These decisions all show that the defendant is not permitted to prove by parol evidence, that the magistrate's certificate does not contain the whole truth, even when the. object of such evidence is to support the deed. I can see no distinction between these cases, and that in which the defendant endeavours to show by parol evidence, that the certificate of the magistrate contains what is not the truth, and thus falsify it, for the purpose of destroying the deed. The judge or justice of the peace in taking an acknowledgment acts judicially, not ministerially. The law imposes on him the duty of ascertaining by his own view and examination, the truth of the matters to which he is to certify, and points out precisely his duty. Having thus entrusted him to see that the proper forms are observed, his solemn certificate that they have been observed, on the faith of which parties act, contracts are proceeded in, moneys are paid, and deeds accepted, must (in the absence of fraud or collusion,) be considered as entitled to full faith and credit; and cannot, without rendering titles to real estate exceedingly insecure, be left at any distance of time afterwards, to the uncertainty and frailty of parol proof, and to all the mistakes, prejudices, imperfections, and hazards that attend it. For these reasons, I am of opinion, that the Court below was right in refusing to permit the plaintiff to produce parol evidence to controvert the magistrate's certificate, and in charging the jury that it was conclusive evidence that the defendant acknowledged the mortgage as required by law.*

2. The mortgage is objected to, first, because the wife did not grant her estate; and, secondly, it is said that she was not a party to the indenture of mortgage, and, therefore, could convey nothing by it. The indenture is certainly informal in the pre-

* See 7 Watts, 228 ; 9 Barr, 15 ; 2 Wright, 336 ; 1 P. F. Smith, 290, 313.

mises, so far as respects the wife, in not making her one of the grantors in the indenture, in the manner usually practised. But the omission of all or any of the formal parts of a deed, does not destroy its validity, *where sufficient appears on its face [*470] to show, that those having an interest intend to convey it, and they join in sealing the instrument. The office of the *premises* in a deed, is, rightly to name the grantor and grantee, and to comprehend the certainty of the thing granted. The office of the *habendum* is to set down again the name of the grantee, the estate that is to be made and limited, or the time that the grantee shall have in the thing granted or demised, and to what use. But the deed that does usually consist of all these parts, may be good notwithstanding some of them be omitted, and if it be not so formally made; for an estate may be made by a deed without any *habendum* at all: and if the name of the grantee be not contained in the premises, yet if it be in the *habendum*, it may be good enough. Shep. Touch. 73. In the present instance, Mrs. Jamison joined in this instrument by executing and acknowledging it; and though she is not named in the premises, yet the premises describe the whole land by metes and bounds, and grant and convey it and also all the estate, right, title, interest, use, possession, property, claim and demand whatsoever, of them the *said Robert Jamison* and *Syndonia his wife*, of, in, to, or out of the same; "to have and to hold the said described sixty-five acres and sixty-one perches of land, *hereditaments and premises*, hereby granted," &c., with a clause of redemption in favour of both. At the conclusion is the clause, "in witness whereof, the *said parties* to these presents, have interchangeably set their hands and seals;" and both the husband and the wife sealed the indenture.

It would seem to be apparent on the face of this instrument, that her interest as well as his, was intended to be conveyed. It cannot be supposed that the husband alone intended to convey the estate of his wife. That could only be done by her. And as it is plain her interest was intended to be conveyed, and the indenture could not have effect except by her conveyance, such must be deemed the operation of the instrument, in order to give effect to the intention of the parties. The leading rule of construction of deeds is, in all cases, that the construction be favourable, and as near to the minds and apparent intent of the parties as possibly it may be, and the law will permit. Shep. Touch. 83; Co. Litt. 313; Plow. 154, 160. And another rule is, that the construction be upon the entire deed, and that one part of it doth help to expound another, and that every word, (if it may be,) may take effect and none be rejected, and that all the parts do agree together, and there be no discordance therein. Shep. Touch.

(Jamison *v.* Jamison.)

84. Another rule is, that the construction be such as that the whole deed, and every part of it, may take effect, and as much effect as may be to that purpose for which it is made. Ib. 84. And this is a rule both in law and equity. 1 Pr. Wms. 457. For these reasons, I am of opinion, that the mortgage was sufficient to pass as well the interest of Mrs. Jamison as of her husband.

[*471] *In relation to another part of this objection, that this is an indenture between parties, and she not being named in the premises as a party, is a stranger to the deed, which has no operation as to her, the rule is, that a stranger executing a deed-poll or an indenture not *inter partes* is bound by it, and may also take advantage of it. But where the deed is *inter partes,* he who is a party to the deed, cannot covenant with another who is no party. But if a mere stranger, not named a party, (where the instrument is *inter partes,*) covenants with another who is named, and seals the deed, he is bound by such sealing. This distinction, is taken by Holt, C. J., in *Salter* v. *Kidley,* (Carth. 76,) and has been often made. See the cases collected in Platt on Covenants, 7, Law Library, January 1834, and 13 Vin. Ab. 52 to 57. In the case of *Salter* v. *Kidley,* above mentioned, which is also reported in 1 Show. 56, and Holt 210, covenant was brought on certain articles of agreement, between J. S. of the one part, and C. R. of the same county, by which J. S. let a house to C. R. at a yearly rent, which C. R. agreed to pay, " and that said rent may be satisfied, I, John Kidley do covenant for myself, &c. on behalf of said C. R., to pay," &c., which deed was sealed by C. R. and Kidley the defendant. It was argued that the defendant was not bound by this covenant, because he was not a party to the deed ; and it is a rule in law, that he who is not a party to the deed, can neither give nor take any thing by it, except by way of remainder. 3 Cro. 76 ; 2 Inst. 673 ; 2 Rolle's Ab. 220 ; 3 Cro. 359 ; 1 Inst. 352 ; Roll. 72 ; 3 Lev. 138 ; 2 Lev. 74. But Holt, C. J. said, " Why cannot a man oblige himself by a deed, if there be express words for it, and he seals it ? Suppose at the end of an indenture it be ' And be it known unto all men, that A. B. for himself covenants &c.' and he puts his seal to it, why should not this oblige him ? A man cannot take immediately when he is not a party ; but where do you find that a man cannot give without being a party? In a deed of feoffment a warrant of attorney to A. not a party, is good now, though formerly held to be otherwise." And the Court was clear in opinion, that the action should lie against the defendant on this deed. So in Perkins, sec. 158, " it hath been holden, that a man shall be bounden by the speaking, if another man, by averment thereof, in putting his seal to it, and delivering of it as his deed." And in section 159, " and it is to be known

(Jamison *v.* Jamison.)

that at this day, a man shall be bounden by putting his seal unto a deed indented, and delivery of the same, and yet the words within the deed are spoken by another man." I am, therefore, of opinion, that the defendant's interest passed by the sealing and acknowledgment of the mortgage, though she was not named as a party in the premises.

It has been further contended, that a married woman has no power to mortgage her lands. It is believed, however, that nothing has been more usual in Pennsylvania, than for husband and wife to \*mortgage the wife's lands, by the ordinary mode of conveyance in mortgage, acknowledged accord- [\*472] ing to the legal form; and it cannot be doubted, that the power to convey in fee simple, practised from the first settlement of the province, and recognised and established by the act of assembly of 1770, confers the right to mortgage—since a power to grant the whole estate necessarily implies a power to grant any lesser estate. This point has been already decided by this Court, in the case of *Wilson* v. *The Harrisburg Bank*, determined at Chambersburg, at October term, 1831.

The form of the acknowledgment is also objected to as defective, in not complying with that which the act of assembly prescribes, in two respects; 1st, in stating that she " did of her own free will and accord, seal and acknowledge the within indenture of mortgage" instead of " seal and deliver;" and 2d, in omitting the word ' compulsion.' I am of opinion, however, that although these are literal deviations from the act of assembly, yet the certificate is substantially in compliance with it; and, therefore, the certificate is sufficient, according to the decisions in *M'Intire* v. *Ward*, (5 Binn. 301,) and *Shaller* v. *Brand*, (6 Binn. 435). Acknowledging a deed sealed by the party, is tantamount to a delivery of it, if none had been made before. A delivery may be not only by acts, but by words without any act of delivery. Co. Litt. 36, *a*. The word ' coercion,' seems to be synonymous with ' compulsion,' and substantially to include it.

Judgment affirmed.

Cited by Counsel, 9 Barr, 15; 7 Harris, 406; 11 Id. 237; 3 Casey, 24; 1 Grant, 404; 4 Wright, 40; 8 Id. 230; 4 P. F. Smith, 302.

Cited by the Court, 4 Harris, 540; 12 Id. 19; 2 Casey, 450; 6 P. F. Smith, 61.