## BRANNAN *vs.* MESICK.

*Sixth Judicial District Court, April,* 1857.

CONSTRUCTION OF WRITTEN INSTRUMENTS—ACKNOWLEDGMENTS.

In the construction of deeds and other instruments the cardinal rule is to arrive at the true intent and meaning of the parties, and to give effect to that intention if it can be done without violating any rule of law.

In certifying an acknowledgment or proof of a deed it is not necessary that an officer should use the express words of the statute. A substantial compliance with the form there given will be sufficient.

Courts feel no inclination to disturb the land titles of the country by undergoing a severity of criticism on the language of a certificate of the proof or acknowledgment of deeds. The omission of the word "uses" in the expression of the term "purposes and uses" is not a fatal defect. The meanings are synonymous.

Constructive notice of a record is not abolished by statute in this State.

Unrecorded conveyances are good against subsequent purchasers, when in the latter, mala fides or malice is shown to have existed.

Courts will not suffer a statute made to prevent fraud, to be a protection to fraud.

Action to set aside a deed as fraudulent and as a cloud upon title.

*Volney E. Howard,* for plaintiff.

*Edwards & English,* for defendant.

The facts are fully set forth in the opinion.

MUNSON J.—John A. Sutter, Jr., on the 28th day of June, 1850, sold to Samuel Brannan, S. C. Bruce, Julius Wetzlar and James S. Graham, certain property in the city of Sacramento. Subsequently,

the grantees divided the property, and mutual deeds of division were executed. In July, 1855, Sutter, Jr., conveyed the whole of the property to Mesick, and plaintiff institutes this suit to cancel the last deed, as a cloud upon his title.

The first question involved is the construction of the conveyance or instrument in writing made by Sutter, Jr., to Brannan, Bruce and others. It is said that it is void for the want of certainty in the description of the premises intended to be conveyed. In the construction of deeds, as well as other instruments, the cardinal rule is to arrive, if possible, at the true intent and meaning of the parties, and to give effect to that intention, if it can be done without violating any rule of law—and if the instrument bears upon its face evidence that it was written by a person unskilled and unacquainted with legal requirements and technicalities, a much greater latitude is indulged than when it appears to have been drawn by a careful and skillful draftsman. (Andrews *vs.* Murphy, 12 Geo. Rep., p. 431.) Applying this rule to the instrument in question—making one clause or part aid and help to expound another—there is no difficulty in the description of the property. The obvious meaning and intent of Sutter, Jr., was to sell all the lots he owned in the city of Sacramento—all the real estate he owned in the State of California at the time of the execution of the instrument. I would examine the instrument at length, and show that such was the clear intent and meaning of Sutter, Jr., but it is unnecessary, as the Supreme Court, in the case of Mesick *vs.* Sunderland, decided July term, 1856, held the description sufficient. They say: "Taking the deed as a whole, it is apparent that the intention was to convey all the real estate of the grantor in the State of California."

The evidence adduced at the hearing of this case clearly establishes that such was the real intent of Sutter, Jr. This evidence, perhaps, could not be taken in view by the Court in construing the words of the instrument, but it shows that the intent, as gathered from the language of the instrument itself is sustained, and sustained by the facts as disclosed by the evidence.

The description of the property being sufficient, the next inquiry is, the nature of the instrument; is it a deed in presenti; does it convey an absolute estate in fee simple with a lien or charge attached, or is it

a conveyance or condition precedent or subsequent, or is it a mere executory agreement for the sale and purchase of lands ?

The Supreme Court, in the case of Mesick *vs.* Sunderland, held tha. it was not a deed in presenti, nor a conveyance in fee with a lien or charge attached. So far, then, I am precluded from examining the instrument, as the decision of the Supreme tribunal is conclusive and binding upon me. They say that it is an executory contract or a conveyance on condition precedent. There is a distinction between a conveyance on condition precedent and a mere executory agreement for the sale and purchase of lands. The former is a conveyance, and on the performance of the condition transfers an estate. It is true the estate does not vest until performance; but when the condition is performed the estate immediately passes and becomes absolute. A condition is a qualification or restriction annexed to a conveyance of lands. Conditions cannot be annexed to estates of inheritance or freehold estates without deed. (Bacon's Abridgment, vol. 2, 283.)

In the case of an executory agreement for the sale and purchase of lands, the title does not vest upon the performance of the covenants, but a deed or conveyance has to be made and executed before the legal estate passes.

If the instrument in question is not a conveyance in fee with a lien or charge attached, then, in my opinion, it must be construed to be a conveyance on condition precedent or subsequent,—the Supreme Court say on condition precedent. I must so regard it: to show that it is not a mere executory agreement, I would call attention to the language used in the latter part of the instrument; it reads: " And the said party of the first part, his heirs, executors, administrators and assigns, doth further covenant to and with the said parties of the second part, their heirs, that in case the said parties of the second part, their heirs and assigns, pay to the said party of the first part, his heirs, executors, administrators or assigns, the just and full sum of $25,000, on or before the first day of July, 1850 ; and the further sum of $25,000 on or before the 29th day of September, 1850 ; and the further sum of $75,000 on or before the first day of July, 1851 ; making, in all, the just and full sum of $125,000 ; then, this instrument is to take effect as a full and complete . conveyance in fee of all and singular the lands, tenements, hereditaments, appurtenances and

real estate, in the State of California, belonging to, or in which the said party of the first part, his heirs, executors, administrators, &c., is, or are, in any way, entitled or interested."

It will be seen that, upon the payment of the money, the legal estate was to vest immediately in the grantees; no other conveyance was to be executed. Regarding, then, the instrument as a conveyance, on condition precedent, it was entitled to be recorded, provided it was properly acknowledged.

Section 24 of the Act concerning conveyances, passed in 1850 (Compiled Laws, page 517) reads : " Every conveyance, whereby any real estate is conveyed, *or may be affected*, duly acknowledged, &c., shall be recorded in the office of the Recorder of the county in which the real estate is situated." Sec. 25 provides that every such conveyance, acknowledged or recorded, shall impart notice to all persons of the contents thereof. Sec. 36 reads : " The term ' conveyance,' as used in this act, shall be construed to embrace every instrument in writing by which any real estate is created, aliened, mortgaged, or assigned, except wills, leases for a term not exceeding one year, and executory contracts for the sale or purchase of lands," &c. This is an instrument in writing; it does affect real estate; it is not a will— not a lease, and, as I have endeavored to show, not a mere executory agreement for the sale and purchase of lands; it is, consequently, a conveyance within the meaning of the act, and, as I have before stated, was, if duly acknowledged, entitled to be recorded. I am not aware that defendant, Mesick, intends to attack the certificate of acknowledgment attached to the conveyance to Brannan and others. As, however, it is noticed in the brief submitted, I will as briefly as possible, give my views as to the rule which Courts should adopt in the construction of such certificates :

It is not necessary that an officer, in certifying the acknowledgment or proof of a deed, should use the express words of the statute. The Legislature, in the passage of the Act concerning conveyances, did not so intend; for the Act itself says, a substantial compliance with the form there given.shall be sufficient; even if the Act itself did not so provide, the Courts would hold such to be the rule. In the case of Alexander Botts *vs.* Merry, 9 Missouri Rep., p. 510, it was held that when the statute requires the officer to certify that the person

acknowledging the deed was personally known to him, it is sufficient if he certify that he was known to him.   The Court in its decision says : It is much to be desired that every officer who takes the acknowledgment of a deed would conform literally to the law, but we know that the convenience of our people requires that the taking of the acknowledgment of deeds should be entrusted to those who are ignorant of the forms of the law—who will take a proper acknowledgment, but blunder in certifying to it.

In the case of Shaller *vs.* Branch, 6 Bin., 438, the Supreme Court of Pennsylvania says :  " We have always declared that it was sufficient if the law was substantially complied with, and on any other principle of construction the peace of the country would be seriously affected, as the certificates of acknowledgment of deeds have been generally drawn by persons who were either ignorant of or disregarded the words of the Act of Assembly.   In the case of Nantz *vs.* Bailey, 3 Dana Rep., p. 111, the Court says it is not indispensable that the certificate should state the exact process of examination in verbal detail.   Such particularity has never been observed or required.   In the case of Livingston *vs.* Ketelle, 1 Gillman, 116, the Supreme Court of Illinois says the certificate states that, " the above named mortgagor personally appeared before the justice and that he was personally known to him as the identical person who executed the mortgage."   This is equivalent to the statement that the individual was personally known to the justice to be the person whose name was subscribed to the mortgage.   The term, " the above named mortgagor," must be understood to mean the real party who was to execute the mortgage.

See also, Den *vs.* Geige, 4 Halsted, p. 225.   Pickett *vs.* Doe, 5 S. & M., p. 471.   Thurman *vs.* Cameron, 24 Wend., p. 87.   Jackson *vs.* Gumaer, 3 Cowan, p. 552.

The summary of all that can be found in the books on this question as stated by the Supreme Court of Missouri is, that a substantial compliance with the law is alone required.   When this appears, the Courts feel no inclination to disturb the land titles of the country by indulging a severity of criticism on the language of the certificate of the proof or acknowledgment of deeds.   From the condition of many portions of this State, the disadvantages under which they labor in

regard to legal information and the necessity of entrusting the execution of the laws in many instances to inexperienced hands, an application of these principles of construction to certificates of acknowledgment will not only be found wholesome, but indispensable to the peace and quiet of the country. The certificate attached to the instrument in this case declares that the grantor acknowledged the deed " for the purposes," &c., omitting the word " uses " given by the statutory form; in every other respect the very language of the statute is strictly followed. The purposes of a deed must be synonymous with its uses. The word omitted is not necessary either to the sense or legal effect of the statutory form.

The instrument from Sutter, Jr., to Brannan and others having been properly acknowledged, and being, as I have endeavored to show, a conveyance affecting real estate, was entitled to be recorded. The evidence shows that it was placed on record in the County Recorder's office of this county on the 20th day of July, 1850. Its registry imparted notice to Mesick, and consequently the subsequent conveyance to him by Sutter, Jr., is fraudulent and void as against Brannan and others.—(See sec. 27th, Conveyances.)

But again, concede that the instrument from Sutter, Jr., to Brannan and others did not operate as a conveyance, and was not entitled to be recorded until the estate passed, yet as soon as the money was paid and the performance of the condition acknowledged by Sutter, Jr., the fee vested, the legal estate immediately passed to Brannan and others, and then most certainly it was entitled to be recorded. The evidence shows that the first payment of $25,000 was paid to Sutter, Jr., at the time the original instrument was recorded and delivered. On the 18th of March, 1851, Sutter, Jr., executes and delivers to Brannan, Bruce, Wetzlar and Graham, two written receipts—the one acknowledging the second payment of $25,000, and the other the sum of $75,000, as payment in full of the third and final payment mentioned in the instrument. These two receipts were acknowledged before a Notary Public and recorded on the 19th of March, 1851, in the office of the County Recorder of this county.

The conditions having been performed, or what is a legal equivalent thereto, their performance having been acknowledged, an absolute estate passed to Brannan and others, and therefore was not the

Brannan vs. Mesick.

conveyance from Sutter, Jr., to Brannan and others properly on record after March 19th, 1851; and did not its registry from that date, if not before, impart notice to subsequent purchasers ?

I will now proceed to examine the case regarding the instrument from Sutter, Jr., to Brannan and others as an executory contract. Under the statute of 1850, as we have already seen, an executory contract for the sale and purchase of real estate was not entitled to be recorded. The Legislature, in 1855, however, amended the act of 1850, and authorized the record of such agreements. Was it intended by the Legislature that this act should have a retroactive effect and legalize the registry of agreements which had been previously placed on record, and constitute the registry of the same, notice as against purchasers subsequent to the passage of the act? I think such should be the construction of the Court. Remedial statutes should be liberally construed, sometimes restrained, sometimes enlarged, so as more effectually to meet the beneficial end in view, and prevent a failure of the remedy. The Legislature has the constitutional right to give to remedial statutes a retroactive effect, provided they do not impair contracts or destroy vested rights. 1 Kent. Com., p. 502-3.

It has a right to make that a legal record which was not so before, and constitute the same notice to all purchasers subsequent to the passage of the act. Mercer vs. Watson, 1 Watts Rep. 330 ; Barnet vs. Barnet, 15 Sergt. & Rawle, p. 72 ; Dulany et al. vs. Tilghman, 16 Gill & Johns, 461 ; Smith Com. on Statutory Construction.

If the record of the instrument was beneficially affected by the Act of April, 1855, then it imparted notice to Mesick, as he purchased subsequent to the passage of the Act; but conceding that it was not the intention of the Legislature to give the Act of April, 1855, a retroactive effect, then the question arises, was Mesick a purchaser in good faith and for a valuable consideration. When he took his deed from Sutter, Jr., did he have actual notice of the instrument executed to Brannan and others, or did he have such notice as put him upon inquiry and rendered his deed fraudulent ? Notice may be either actual or constructive. In some of the States it is expressly provided by statute that an unregistered conveyance shall be void as against all except those having actual notice, thus abrogating constructive notice ; but there is no such provision in our statute, and, consequently, in this

State constructive notice is not abolished.    Our Registry Act simply protects a purchaser who takes the precaution to search the records, and registers his own conveyance against prior unrecorded conveyances of which he had no notice.    1 Sand. Ch. Rep., p. 425.

To effect, however, a purchaser having a deed duly registered with constructive notice, it should be of such a nature as to show a want of good faith, and justify an inference of actual knowledge or notice. White & Tudor, Equity Cases, Vol. 2, Pt. 1, p. 132-3.

In the authority cited it is said, nothing is better settled in England and this country, than the general doctrine that the purchaser of a legal title will be liable to all equities of which he had actual or constructive notice at the time of the purchase : a person purchasing under such circumstances is a mala fide purchaser, and will not be enabled by getting in the legal estate to defeat such prior equitable interest.   In the pricipal case this was put on the ground that, although the words of the Registry Acts are express, that unregistered conveyances shall be void as against subsequent purchasers, the Legislature could not have intended to sanction such gross wrong and injustice as is implied in accepting a conveyance of an estate with a knowledge that it had previously been sold to another, and for the purpose of depriving him of the benefit of his purchase.

In England this construction of the act is confined to Courts of Equity ; but in this country it is well settled both in Courts of Law and Equity, that a conveyance, duly registered, passes no title whatever, when it is taken with a knowledge of a prior unregistered conveyance.    Our recording acts only apply in favor of parties who have acted in good faith, and cannot be made the means of fraud or oppression.    White & Tudor, Equity Cases, Vol. 2, Pt. 1, p. 130.

Our act concerning conveyances, sec. 26, provides that every conveyance of real estate not duly recorded, shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, thus making unregistered conveyances good when mala fides or malice is shown to have existed.    But if our statute contained no such qualifying words, the construction would be the same.    White & Tudor, Equity Cases, Vol. 2, Pt. 1, p. 130.

Court, says Chancellor Kent, 10 Johns, 461, will not suffer a *statute made to prevent fraud* to be a *protection to fraud.*   It may often be a

question what fact or circumstances will amount to notice sufficient to charge the party, but if the fact of notice be once made out, there is no doubt in the books but that as against such prior deed the subsequent registered conveyance is to be adjudged fraudulent and void. It is not necessary in any case to constitute notice, that it should be in the shape of a distinct and formal communication; it will be implied in all cases where a party is shown to have had such means of informing himself as to justify the conclusion that he has availed himself of them; whatever, therefore, is sufficient to direct the attention of a purchaser to the prior rights and equities of third persons, and to enable him to ascertain their nature by inquiry, will operate as notice. White & Tudor, Equity Cases, Vol. 2, Pt. 1, p. 116. If a party designedly abstain from making inquires for the purpose of avoiding knowledge, he will be charged with notice. 1 Story's Equity Jur. § 400—note. Having thus examined the law, let us see whether Mesick was a bona fide or fraudulent purchaser. The conveyance or instrument from Sutter, Jr., to Brannan and others, was placed upon record in July, 1850; if it was placed there without authority of law, the registry *itself* imparted no notice, but it is shown by the evidence that Mesick was engaged in the County Recorder's office in this county, from some time in 1853 to 1855, during a portion of which time he acted as Deputy Recorder, and during the whole time he was actively engaged in transcribing from the records; he was an examiner of titles, made out abstracts, &c.—one of which, dated March 20th, 1855, was produced in evidence. In it he mentions the conveyance or instrument from Sutter, Jr., to Brannan and others; he calls it " conditional," and refers to the book and page in and on which it was registered—thus showing that he had seen, read and examined it—it was a true copy of the original. Under these circumstances, can it be said that Mesick purchased without knowledge —that there was not sufficient to put him upon inquiry ? Can he be considered as a purchaser in good faith ? I am aware that the Supreme Court of Pennsylvania, (one of the Judges dissenting,) in the case of Kims *vs.* Swope, 2 Watts, 72, says that an actual inspection of a defective registry will not amount to actual notice. But in the first place the decision was not applicable to the facts in the case before the Court, and, consequently, it is a mere dictum—and in the

second place it is, in my opinion, unsupported by sound reasoning. A party purchased two tracts of land—one lying in Huntington county, the other in Bedford county—both tracts were conveyed by the same deed; it was recorded, however, only in Huntington county. I find the decision reviewed in White & Tudor's leading cases in Equity. It is there said—" The evidence was not merely sufficient, but legally conclusive, that the record was a true copy of the deed, as to the lands in Huntington county, although *not* as to those in Bedford county ; and if it had actually been examined by the purchaser, which *could not be presumed* and *was not proved,* the case would have stood upon the same footing as if he had seen a deed duly executed and proved of the lands in the former county, and containing a recital of a contemporaneous conveyance of those in the latter. Such a recital would not have been *sufficient to induce* and *direct inquiry,* and thus operate as actual notice. And even if the record was to be regarded as a mere unauthenticated copy, still a copy of a deed, purporting to pass the land for which a purchaser is in treaty, found among the papers of a party claiming an interest in other land under the same deed, would seem to make it the duty of the purchaser to pause in completing his purchase, until he had made inquiry of the parties to the instrument. In Kims *vs.* Swope, however, there was nothing to prove that the copy had been seen by the purchaser, except the presumption that a purchaser examines the registry, which, as a presumption of fact, has no weight whatever, and as a presumption of law, is applicable only when the deed is registered in the same county with the land."

Again, section 27 of the Act concerning conveyances, passed in 1850, authorizes the recording of powers of attorney, and section 28 of the same Act forbids the revocation of a power of attorney until the revocation is recorded. The instrument in question contains a power of attorney from Sutter, Jr., to Brannan, Bruce, Wetzlar, and Graham. As such, it was entitled to be recorded. So far, then, it was not a defective registry, but one authorized by law, and having been seen and read by Mesick, did it not impart notice to him of all its contents, and have the same force and effect as if he had seen the original instrument ?

If there existed any doubt, however, with regard to Mesick's having

actual notice of the existence and contents of the instrument to Brannan and others, it is put at rest by the testimony of Col. Sanders. He testifies to conversation between himself and Mesick, in which the conveyance or instrument was discussed. They called it the 2,200 lot deed, and was by them considered insufficient and void for want of certainty in the description of the land intended to be conveyed. Mesick well knew what land Sutter Jr., intended to convey by the instrument, but he thought the description was imperfect and insufficient, and he was willing to take advantage of it, and for this purpose started for Acapulco, where Sutter, Jr., resided, and obtained from him a deed, not only for the property previously sold to Brannan and others, but all other property which he, (Mesick,) from the examination of the records, concluded had been defectively conveyed. According to the testimony of the witness, Mesick started, promising to obtain the deed in favor of Sutter, Jr. However this may be, he took the conveyance to himself.

The evidence shows that the property thus conveyed to Mesick is worth about one million ($1,000,000) dollars, for which he paid at the time the conveyance was executed, $500. He has since paid the further sum of $900. He also executed to Sutter, Jr., a bond in the penal sum of $25,000, the conditions of which as testified to by the witness are "very singular." The bond was probably given to secure the payment of a certain portion of the proceeds that Mesick might realize from sales. Mesick's object in connecting himself with the Recorder's office was to engage in a gigantic speculation—having devoted from one to two years to an examination of the records, having ascertained each and every flaw and defect, he takes counsel and proceeds to Acapulco to accomplish his ends; although he was well aware that the property that he was thus seeking to obtain had been previously sold and purchased in good faith; that a valuable consideration had been paid for it—that it embraced a large portion of the real estate in this city—that valuable buildings had been erected upon it, and large sums of money expended in improvements. Although he was well aware that it was held by innocent parties, and who, for years, (so far as the Sutter title was concerned,) had been in the undisputed possession of it. Although he well knew that from many he was endeavoring to take their homesteads, acquired, perhaps, after many years of hard toil and

labor. Although he was well aware that he was seeking to take from his neighbors that which rightfully and justly belonged to them; that he was throwing a cloud upon titles in this city, and thereby impairing and retarding its prosperity and growth; notwithstanding all this, he asks the Court to aid and assist him in carrying out his gross speculation. I should regret to learn that in any civilized country such a fraud could be successfully perpetrated.

I have no desire to speak harshly, but I feel it to be the duty of courts of justice to discountenance and condemn such unscrupulous and heartless speculations; to countenance such barefaced attempts to unsettle long established titles, and by virtue of mere technical defects, deprive hundreds of parties of property which they have bought in good faith and paid full value for, would be productive of incalculable evil. If courts were to encourage speculations of this character, in the language of Lord Redesdale, "I have no doubt but that they would swarm." In this country particularly, where there has been a great incorrectness in transacting business in remote periods, it would be highly dangerous to encourage such claims. It would be mischievous to society—mischievous to the country. In my opinion, an attempt of this description should be watched with every sort of jealousy in all cases, and received with every mark of dislike which can be shown to it.

Chief Justice Wood, of the Supreme Court of Ohio, in speaking of speculations and attempts to unsettle long established titles, says: "Fear is entertained that the feelings of this Court are hostile to the disturbance of titles long enjoyed, and that unwarranted prejudices may defeat a recovery. For once, I must admit that it is always with me a matter of serious regret when I see litigation springing up that is so often attended with such disastrous results to innocent purchasers. It is only in those cases, however, where the spoil is to be divided with some *mousing speculator*, and when from the state of the law the Court may be forced to aid in that result that it feels itself called upon to give judgment in that spirit of disapprobation which tends to discourage a cause that adds nothing to the character of a profession in other respects proverbial for integrity and correct sentiment throughout the civilized world."

A decree must be entered in favor of plaintiff. Counsel will draw one and submit it to the Court.